Robert D. Albergotti
HAYNES AND BOONE, LLP
901 Main St., Suite 3100
Dallas, TX 75202
Phone: 214.651.5000

Judith Elkin  JE-4112
Jason A. Nagi  JN-6891
HAYNES AND BOONE, LLP
153 East 53rd Street, Suite 4900
New York, NY 10022
Phone: 212.659.7300

*Counsel to Shared Technologies Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
:
SHARED TECHNOLOGIES INC.,                 :
:
      Plaintiff,                           :
:
v.                                        :        Civil Action No. 08-CV-3050 (LAK)
:        (ECF Case)
ALLEGIANCE TELECOM LIQUIDATING            :
TRUST, XO HOLDINGS, INC., and             :
MERRILL LYNCH, PIERCE, FENNER             :
& SMITH,                                  :
:
      Defendants.                          :
-----------------------------------------------------------x


## BRIEF OF APPELLANT SHARED TECHNOLOGIES INC.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Statement of the Issues Presented ........................................................................ 1

Standard of Review ................................................................................................. 1

Statement of the Case ............................................................................................ 2

    I.      Nature of the Case ................................................................................ 2

    II.     Course of Proceedings in the Court Below ......................................... 3

    III.    Statement of Facts ............................................................................... 3

Summary of the Argument ..................................................................................... 6

Argument .............................................................................................................. 6

    I.      The Bankruptcy Court Erred as a Matter of Law in Finding That It Had Jurisdiction to Order STI to Issue Additional Shares of STI Stock to V&K .......... 7

        A.    Because V&K's Dispute with the Trust Does Not Concern Implementation or Consummation of the Plan, the Bankruptcy Court Had No Post-Confirmation Jurisdiction ............................................. 8

        B.    Plan Provisions Show That STI Was to Operate Outside the Jurisdiction of the Bankruptcy Court ........................................................ 12

            1.    Key Terms of the Confirmation Order and Plan Provide That STI Operate Outside the Jurisdiction of the Bankruptcy Court ..... 12

            2.    The Plan's Post-Confirmation Jurisdiction Provisions Should Be Read Narrowly ............................................................. 14

    II.     The Bankruptcy Court Erred as a Matter of Law in Finding That the Plan Imposed a Duty on STI to Guarantee That All Creditors Received Their Plan Distributions if the Trust Failed to Make Them ................................... 15

        A.    The Plan Required STI to Issue *All* Securities on the "Initial Effective Date" ........................................................................................... 15

        B.    STI Did Not Have a Continuing Duty to Issue Additional Shares ............ 15

C.      Substantive Consolidation Did Not Subject STI to Bankruptcy
        Court Jurisdiction ...................................................................................... 17

D.      The Trust—Not STI—Was Obligated to Issue the STI Stock
        to Creditors ................................................................................................ 18

III.    The Bankruptcy Court's STI Orders Constitute Impermissible Plan
        Modifications in Violation of 11 U.S.C. § 1127, Which Only Allows Plan
        Modification Before Substantial Consummation ................................................... 20

A.      The Plan Only Authorized 10 Million Shares of STI; the STI Orders
        Modify the Plan to Require More .............................................................. 20

B.      V&K Has No Standing to Request Plan Modification Because It Was
        Not a Plan Proponent ................................................................................ 21

C.      Under Section 1127, the Plan Cannot be Modified Because It Has
        Been Substantially Consummated .............................................................. 22

Conclusion ............................................................................................................................. 22

# **TABLE OF AUTHORITIES**

FEDERAL CASES

*In re Blackwood Associates, L.P.*,
    153 F.3d 61 (2d Cir. 1998)....................................................................................1

*In re Burk Development Company, Inc.*,
    205 B.R. 778 (Bankr. M.D. La. 1997) ............................................................ 21-22

*In re Calpine Corporation*, No. 05-60200,
    2008 WL 207841 (Bankr. S.D.N.Y., Jan. 24, 2008)...................................................21

*Central States, Southeast & Southwest Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.)*,
    10 B.R. 203 (Bankr. N.D. Ohio 1981) .................................................................11

*In re Colony Hill Associates*,
    111 F.3d 269 (2d Cir. 1997)...................................................................................1

*In re Craig's Stores of Texas, Inc.*,
    266 F.3d 388 (5th Cir. 2001) ..................................................................................9

*Donald v. Bernstein*,
    104 F.3d 547 (3d Cir. 1997)...................................................................................9

*In re Duplan Corporation*,
    212 F.3d (2d Cir. 2000)...........................................................................................1

*Falise v. American Tobacco Company*,
    241 B.R. 48 (E.D.N.Y. 1999) ...............................................................................14

*Findley v. Blinken (In re Joint Eastern & Southern District Asbestos Litigation)*,
    982 F.2d 721 (2d Cir. 1992)...................................................................................9

*Gray v. Polar Molecular Corporation (In re Polar Molecular Corporation)*,
    195 B.R. 548 (Bankr. D. Mass. 1996) .....................................................................9

*Insurance Corporation of Ireland, Ltd. et al., v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694, 102 S.Ct. 2099 (1982).......................................................................7

*Kassover v. Prism Venture Partners, LLC (In re Kassover)*,
    336 B.R. 74 (Bankr. S.D.N.Y. 2006) ......................................................................9

*Penthouse Media Group v. Guccione (In re General Media Inc.)*,

335 B.R. 66 (Bankr. S.D.N.Y. 2005) ...................................................................8, 9

*In re Planet Hollywood International*,
   274 B.R. 391 (Bankr. D. Del. 2001) ....................................................................21

*In re Resorts International*,
   372 F.3d 154 (3d Cir. 2004).............................................................................7, 9

*In re Shenango Group, Inc.*,
   501 F.3d 338 (3d Cir. 2007)..................................................................................7

*United States v. Spallone*,
   399 F.3d 415 (2d Cir. 2005)..................................................................................1

*In re U.S. Brass Corporation*,
   301 F.3d 296 (5th Cir. 2002) ................................................................................1

*Zahn Associates, Inc. v. Leeds Building. Products, Inc. (In re Leeds Building Products, Inc.)*,
   160 B.R. 689 (Bankr. N.D. Ga. 1993) ...................................................... 10-11, 14

## FEDERAL STATUTES

11 U.S.C. § 1127 ................................................................................1, 20, 21, 22

28 U.S.C. § 157 .....................................................................................................7

28 U.S.C. § 1334 ...................................................................................................7

## FEDERAL RULES

Fed. R. Bankr. P. 8013 ..........................................................................................1

## ARTICLES

Lander, David, *Jurisdiction After Confirmation of a Chapter 11 Plan (and a Bit About Liquidating Plans After a "Chapter 363" Sale)*
   Proceedings of the American College of Bankruptcy, March 2008 ....................... 7-8

## STATEMENT OF THE ISSUES PRESENTED

I.    Whether the Bankruptcy Court erred as a matter of law in finding that it had jurisdiction to order STI to issue additional shares of STI stock to V&K to resolve a dispute between the ATLT and V&K.

II.   Whether the Bankruptcy Court erred as a matter of law in finding that the Plan imposed a duty on STI to guarantee that all creditors received their Plan distributions if the Trust failed to make them.

III.  Whether the Bankruptcy Court's STI Orders constitute impermissible plan modifications in violation of 11 U.S.C. § 1127, which only allows plan modification before substantial consummation.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*.  Fed. R. Bankr. P. 8013; *In re Colony Hill Assoc.*, 111 F.3d 269, 273 (2d Cir.1997).  The bankruptcy court's interpretation of the text of the plan of reorganization, the confirmation order, and the final decree are conclusions of law reviewed *de novo*.  *In re Duplan Corp.*, 212 F.3d 144, 151 (2d. Cir. 2000).[1]  The bankruptcy court's finding that it had subject matter jurisdiction is also reviewed *de novo*.  *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002).

---

[1] Although the Second Circuit has held that it will accord substantial deference to the draftsman when an issuing judge interprets his or her own orders, that deference is premised "on the truism that the draftsman of a document is uniquely situated to understand the intended meaning of that document."  *United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) (citing *In re Blackwood Assocs., L.P.*, 153 F.3d 61 (2d Cir. 1998)).  That truism does not apply in cases where the bankruptcy court did not draft the document, but merely approved the document in the form agreed to by the parties as required by the Bankruptcy Code and Bankruptcy Rules.  *Blackwood*, 153 F.3d at 66.  Under those circumstances, the document is more akin to a contract than to a court order, and the bankruptcy court's interpretation of the document is entitled to no special deference.  *Id.* The Plan was the result of negotiations between the Debtors, the ATLT and the creditors.  The Debtors drafted the Plan with input from the creditors and the ATLT.  The bankruptcy court then approved the Plan in the form proposed by these parties, which included a number of technical provisions regarding how assets were to be distributed.  Thus, the Plan is more akin to a contract than a court order, and the bankruptcy court's interpretation of the Plan should not be entitled to special deference.

## STATEMENT OF THE CASE

### I.    Nature of the Case

Shared Technologies Inc. ("STI") emerged from the Allegiance Telecom, Inc. bankruptcy cases on June 23, 2004 as a separate company.  Record on Appeal, Record Number 29 at 206.[2] As part of its emergence as a separate entity, STI issued 100% of its authorized stock to the Allegiance Telecom Liquidating Trust (the "ATLT" or "Trust").  R. 16 at 4-5.  Upon issuing its stock, STI severed any connection to the Allegiance Telecom, Inc. bankruptcy and began operating its business free and clear of the bankruptcy court's jurisdiction.  R. 4 at 18.  The Debtors' Third Amended Joint Plan of Reorganization (the "Plan") (R. 4 at 1-39) and the related Plan documents, including the Liquidating Trust Agreement (the "Trust Agreement") (R. 2, Ex. C at 1-20), directed how, when, to whom, and under what circumstances the Trust was to dispose of its assets, including the STI stock.[3]

No Plan provision guaranteed creditors that they would receive distributions of STI stock. R. 4 at 1-39.  Rather, the Plan distributed three sets of Trust interests to creditors who elected to forego a cash payment.  R. 4 at 14.  STI had no role or responsibility in any potential stock distributions.  R. 4 at 1-39.  More than three years after STI's exit from bankruptcy, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered two orders: (1) Order Approving Stipulation and Order Concerning Required Plan Distributions (the "Distributions Order") (R. 17); and (2) Stipulation and Order Granting XO Holdings, Inc.'s Motion for Entry of an Order Compelling the Allegiance Telecom Liquidating Trust to Make Required Plan Distributions (the "Stock Order," (R. 18) and collectively with the

---

[2] Hereinafter, the Record on Appeal will be cited as R.___ or R. __ at ____ coinciding with the Designation of Record on Appeal.

[3] The Trust had sole discretion to sell the STI stock and distribute proceeds to creditors or to issue the STI stock to creditors.  R. 2, Ex. C at 2.

Distributions Order, the "STI Orders.")  The Bankruptcy Court determined that despite STI's exit from bankruptcy and STI's compliance with the terms of the Plan, it was still subject to the Bankruptcy Court's jurisdiction because a third party—*the Trust*—failed to distribute stock to *one* unsecured creditor, V&K Holdings, Inc. ("V&K").  R. 17, Ex. A.  Based on this determination of subject-matter jurisdiction, the Bankruptcy Court interpreted the language of the Plan as imposing stock distribution obligations on STI and directed STI to issue the stock to V&K to make up for the stock that was supposed to have been distributed to V&K by the Trust. R. 18 at 33.  STI is now appealing the STI Orders and files this brief in support of its appeal.  R. 19, 20.

## II.     Course of Proceedings in the Court Below

On December 20, 2007, XO Holdings Inc. ("XO") filed its Motion of XO Holdings, Inc. for Approval and Entry of Stipulation and Order Concerning Required Plan Distributions ("Motion Concerning Distributions").  R. 11.  The Bankruptcy Court held a hearing on the Motion Concerning Distributions on January 29, 2008.  R. 25.  On February 7, 2008, the Bankruptcy Court entered the STI Orders.  R. 17, 18.  On February 19, 2008, STI filed its notices of appeal of the STI Orders.  R. 19, 20.

## III.    Statement of Facts

Bankruptcy Cases.  On May 14, 2003, Allegiance Telecom, Inc. and various direct and indirect subsidiaries (collectively "Allegiance" or the "Debtors"), filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). R. 29 at 1.

The Plan.  The Plan was confirmed on June 10, 2004.  R. 5 at 56.  Under the terms of the Plan and the associated Findings of Fact, Conclusions of Law and Order Confirming Debtors'

Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Order"), the Plan became effective on June 23, 2004 (the "Initial Effective Date").  R. 29 at 206.  Under the Plan and the Trust, certain unsecured creditors (who had made a pre-confirmation election) became holders of so-called ATLT "B" Trust Interests ("'B' Interests") which represented the right to receive pro rata distributions of the stock of STI (or the proceeds thereof) held by the ATLT.  R. 20 at 13, 14.  Pursuant to the terms of the Plan,[4] STI emerged from bankruptcy and commenced its existence as a corporation operating under and subject to the corporate and other laws of the state of Delaware.  R. 5 at 24.

Paragraph 18 of the Confirmation Order provides:

> After the Initial Effective Date, (a) . . . Reorganized STFI shall continue to exist in accordance with the applicable laws in the respective jurisdiction in which [it is] incorporated and pursuant to [its certificate] of incorporation, . . . in effect prior to or as of the Initial Effective Date, except to the extent that such [certificate] of incorporation . . . [is] amended or restated under the Plan; . . . (c) . . . Reorganized STFI . . . may operate [its business] and may use, acquire, and dispose of property and compromise or settle any claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

R. 5 at 24.

Paragraph 31 of the Confirmation Order provides that:

> . . . On the Initial Effective Date, the operation of . . . Reorganized STFI . . . shall become the general responsibility of the new Board of Directors of . . . Reorganized STFI . . . subject to, and in accordance with, its . . . restated certificate of incorporation.

R. 5 at 39.

In pertinent part, section 5.3(f) of the Plan provides:

> (f)    **Reorganized STFI**.  Reorganized STFI shall continue to exist after the Initial Effective Date as a separate legal Entity, with all powers of a corporation under the laws of the State of Delaware, and without prejudice to any right to alter or terminate such existence (whether by merger, acquisition, or otherwise) under

---

[4] The Plan refers to STI, as defined herein, as "Reorganized STFI."

the laws of the State of Delaware. Except as otherwise provided in the Plan or any related document, on and after the Initial Effective Date, the STFI Assets shall vest in Reorganized STFI free and clear of all Claims and Liens. On and after the Initial Effective Date, Reorganized STFI may operate the STFI Assets and may use, acquire or dispose of the STFI Assets without the supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

R. 5 at 18.

STI submits that the Plan imposed a single burden upon STI—the Plan directed STI to issue the STI stock ("STI Stock," defined as "STFI New Common Stock" in the Plan, R. 4 at 7) on the Initial Effective Date. R. 4 at 18. STI did that. R. 16 at 4.

The Trust. The Trust held the STI Stock for the benefit of certain unsecured creditors who had elected to be holders (the "Electing Holders") of the "B" Trust Interests. R. 2, Ex. C at 2. The Trust had broad powers within its business judgment to sell the STI Stock and distribute the cash proceeds to Electing Holders or to distribute some or all of the STI Stock in kind to such Electing Holders. R. 2, Ex. C at 11-12. Electing Holders had no right to compel issuance of the STI Stock. R. 2, Ex. C. The Trust held the STI Stock for nearly three years.

In April 2007, the ATLT issued the stock in STI to the Electing Holders. R. 16 at 5. V&K was an Electing Holder. Instead of issuing the stock to V&K, however, the ATLT made a cash distribution. R. 13 at 74. Five months later, in August 2007, XO Holdings, Inc. ("XO"), V&K's parent company, filed a motion (the "August Motion") seeking an order compelling the ATLT to distribute STI stock to V&K. R. 7. The ATLT opposed XO's motion. R. 9. A hearing on that motion was held on November 6, 2007. R. 13. The Court ruled that V&K was entitled to a pro rata share of STI stock. To give effect to its decision, the Court ruled that STI should issue enough additional shares of its stock such that V&K would own the appropriate proportional share (approximately 15.5%) of STI's total stock. R. 13 at 82. XO, the ATLT and others (but

not STI) agreed upon a proposed stipulation and order.  R. 11, Ex. A.  That proposed stipulation and order outlined a process by which V&K would verify its ownership of certain claims, the Trust would calculate the number of shares that V&K should receive, and then the appropriate number of shares would be issued by STI to V&K.  R. 11, Ex. A.  On December 20, 2007, XO filed its Motion Concerning Distributions requesting the Bankruptcy Court to approve this proposed stipulation and order.  R. 11 at 1-4.

At a hearing on January 29, 2008, over the objection of STI, the Court announced that it would grant the relief requested in the Motion Concerning Distributions and direct that STI issue stock to V&K.  R. 25.  On February 7, 2008, the Court entered the STI Orders.  R. 17, 18.  On February 19, 2008, STI filed its Notices of Appeal.  R. 19, 20.

## SUMMARY OF THE ARGUMENT

The dispute at issue is not a dispute with STI, but rather a dispute between the Trust and V&K.  STI completed its obligations under the Plan in June 2004 and at that time became free and clear of the Bankruptcy Code and the Bankruptcy Court.  The dispute between the Trust and V&K does not involve an issue of interpretation or implementation of the Plan's provisions relating to STI.  As such, the Bankruptcy Court lacked jurisdiction to enter the STI Orders. Moreover, even if the Bankruptcy Court had jurisdiction, it erroneously interpreted the Plan in concluding that STI could be compelled to issue its shares to V&K.

## ARGUMENT

The bankruptcy court's conclusions of law—that it had jurisdiction over the dispute and its interpretation of STI's duties under the Plan and Confirmation Order—are erroneous.

I.     **The Bankruptcy Court Erred as a Matter of Law in Finding That It Had Jurisdiction to Order STI to Issue Additional Shares of STI Stock to V&K.**

The Bankruptcy Court erred in finding that it had jurisdiction to order STI to issue additional STI stock to V&K to resolve a dispute between the ATLT and V&K that did not involve the interpretation, implementation or consummation of the Plan.

The scope of bankruptcy court jurisdiction diminishes with plan confirmation.  *In re Shenango Group, Inc.*, 501 F.3d 338, 343 (3d Cir. 2007).   The essential inquiry post-confirmation is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction."  *Id.*[5]  As previously noted, in June 2004, the Trust was created, virtually all of its assets contributed, including the STI Stock, its beneficiaries identified (to be a beneficiary, a creditor had to make certain elections prior to June 23, 2004) and its Trustee appointed.  The Bankruptcy Court clearly had jurisdiction over these Trust settlement and organizational activities.  After these events were concluded, however, the Bankruptcy Court lacked extensive continuing jurisdiction.  As one noted commentator recently observed:

> The court appears to have the jurisdiction to appoint a liquidating trustee or agent or committee in implementation of the plan.  However, after that appointment has been made, the court will retain jurisdiction over that liquidating trustee, agent or committee only if the remaining acts of the liquidation trustee can fairly be defined as implementation.  Many liquidating plans include comprehensive trust agreements which govern post-confirmation activity.  The initial vesting activities may require the use of § 1142, but thereafter the trustee operates as any other non-bankruptcy trustee, and the court is without extensive continuing jurisdiction (other than avoidance actions and remaining claims objections).

---

[5] Subject matter jurisdiction cannot be conferred by consent of the parties.  *Ins. Corp. of Ireland, Ltd. v. Compagne des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982).  "If a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order."  *In re Resorts Int'l*, 372 F.3d 154, 161 (3d Cir. 2004).  In *Resorts Int'l*, the Third Circuit acknowledged that the plan of reorganization contained a retention of jurisdiction provision, but concluded that such a provision was irrelevant if jurisdiction was lacking under 28 U.S.C. § 1334 or 28 U.S.C. § 157.  *Id.*  In applying this instruction in *In re Shenango Group, Inc.*, the court analyzed whether it had jurisdiction under 28 U.S.C. § 157 without placing independent weight upon the retention of jurisdiction provision in the plan.  *See In re Shenango*, 501 F.3d at 344 n.1.  This Court should first determine whether it has jurisdiction under 28 U.S.C. § 157, *i.e.*, if the dispute affects the interpretation, implementation, or consummation of the Plan, without placing independent weight upon any Plan provisions asserting retained jurisdiction.

Lander, David, *Jurisdiction After Confirmation of a Chapter 11 Plan (and a Bit About Liquidating Plans After a "Chapter 363" Sale)*, Proceedings of the American College of Bankruptcy, March 2008.

As explained in detail below, there was no basis for the Bankruptcy Court to exercise its jurisdiction to enter the STI Orders. This lack of jurisdiction is made even clearer by the instant circumstances in which (i) the Trust was fully settled three years before the events in question occurred and (ii) the dispute relates to the failure of the Trust to fulfill an obligation to V&K and not to any act or omission by STI.

> **A.    Because V&K's Dispute with the Trust Does Not Concern Implementation or Consummation of the Plan, the Bankruptcy Court had no Post-Confirmation Jurisdiction.**

For a bankruptcy court to find post-confirmation jurisdiction over a proceeding, the proceeding "must affect some aspect of the plan—its meaning, its implementation or its consummation." *Penthouse Media Group v. Guccione (In re General Media Inc.)*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005). Otherwise, jurisdiction does not exist. The Bankruptcy Court applied the *General Media* standard and concluded that it had post-confirmation jurisdiction to enter the STI Orders:

> I accept XO's argument . . . that the plan does not have the requisite clarity to let STI escape the effects of the mistake regarding the V&K distribution. I say this based upon my interpretation of the plan, which, by the way, [is] consistent with *General Media* and *Resorts Int'l*, [which] in and of itself I believe, means that I have subject matter jurisdiction.

R. 17, Ex. A at 12. The Bankruptcy Court's interpretation of the law and the relevant bankruptcy documents was erroneous. A majority of the cases cited by the bankruptcy court to support its jurisdiction over STI actually determined that jurisdiction did not exist despite similar factual

circumstances.[6]  The few cases that exercised post-confirmation jurisdiction generally involved *debtors*, not remote parties like STI, that failed to comply with the terms of the plan, post-confirmation, or involved supervision of trust distributions.[7]

An application of the *General Media* criteria to the case at bar compels the conclusion that the bankruptcy court did not have jurisdiction to enter the STI Orders:

(a)    The STI and Allegiance Bankruptcy estates ceased to exist when the estate assets vested in the Trust in 2004.

(b)    This dispute does not involve a Plan implementation issue.  The Plan was fully implemented and consummated when the ATLT Assets,[8] including the New STI Stock, vested in the Trust and the creditors' elections to either take a cash recovery or receive Trust interests became effective.  When the Confirmation Order was entered, Electing Holders became vested in their ATLT "B" Interests. R. 4 at 20.

(c)    The dispute does not involve a Plan interpretation issue.  There is no dispute that V&K made the election to receive the New STFI Common Stock. There is no dispute about what that election meant.  The only issue is the Trust's failure to make a required distribution to a creditor.

---

[6] *See, e.g.*, *General Media*, 335 B.R. at 75 (*no jurisdiction* because "the property of the various estates vested in the respective reorganized debtors on the Effective Date, and the estate ceased to exist.  Thus, any recovery will inure solely to the benefit of the plaintiff."); *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) (*no jurisdiction* even though (i) claim would effect former creditors of estate that exchanged creditor status for right to share in assets of trust, (ii) trust's assets were once assets of estate, (iii) resolution of claims would not affect estate, have incidental effect on reorganized debtor, and would not interfere with plan implementation); *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388 (5th Cir. 2001) (*no jurisdiction* for breach of contract action even when "contract … was … assumed as part of the plan"); *Kassover v. Prism Venture Partners, LLC (In re Kassover)*, 336 B.R. 74, 77-78 (Bankr. S.D.N.Y. 2006) (*no jurisdiction* over claims against liquidating trustee for failing to make payment under terms of merger agreement approved by bankruptcy court).

[7] *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997) (finding jurisdiction because Bankruptcy Court re-opened chapter 11 case after it had been closed and converted it to a chapter 7 of *debtors'* "material default with respect to implementing the plan of reorganization"); *Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.)*, 195 B.R. 548, 550 (Bankr. D. Mass. 1996) (finding jurisdiction over a payment default by the reorganized debtor where the plan obligated the *reorganized debtor* to make "contingent distributions to . . . general unsecured claimants from, *inter alia,* the Debtor's post-confirmation income."); *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litigation)*, 982 F.2d 721 (2d Cir. 1992) (Bankruptcy Court's appointment of examiner to provide "expert advice on the difficult matter of estimating future claims against the Trust" did not exceed its jurisdiction).

[8] As defined in the Plan, the "ATLT Assets" means (a) the XO Common Stock, (b) the New STFI Common Stock, (c) the Litigation Cash, (d) the Available Cash, and (e) all other assets of the Estates that are not Acquired Assets.

(d)    STI is a total stranger to this dispute.  The controversy between the Trust and V&K arose years after STI emerged from bankruptcy and was not caused by or as the result of any act or failure to act on STI's part.

(e)    The Trust, not STI, had the responsibility to make sure creditors got their Plan distributions.  STI was not charged with any responsibility in that regard.  The Plan provided that STI issue its shares to the Trust, not the Creditors.

(f)    The Plan clearly stated that the STI Stock is a Trust Asset, not an asset of the creditors.  The Plan did not guarantee that any creditor would be entitled to any distribution of STI Stock.  The Trust, at its discretion, could have decided to liquidate the shares and to distribute cash to the creditors.  STI would not have had any role in any of those Trust decisions.

(g)    The grantor trust language in section 5.4(o)(ii) of the Plan provided that, for tax purposes, the transfer by STI of its stock to the Trust was treated as a transfer of the assets directly to the holders of the claims followed by such holders transfer of the stock to the trustee.  Pursuant to this provision, STI submits that for three years the ATLT has been operating as a grantor trust, which further implies that the Electing Holders' interest in the Trust vested and the Plan was fully implemented on the Initial Effective Date.

(h)    Finally, an adequate remedy can be fashioned between the ATLT and V&K without the exercise of jurisdiction over STI.  The Trust has sufficient funds to make V&K whole by a cash settlement.  R. 25 at 22-23.

From a subject-matter jurisdiction perspective, this case is much like *Zahn Assoc., Inc. v. Leeds Bldg. Prods., Inc. (In re Leeds Bldg. Prods., Inc.)*, 160 B.R. 689 (Bankr. N.D. Ga. 1993), where the Court lacked jurisdiction over a dispute between an indenture trustee of a trust created under the debtor's plan and the debtor.  The *Leeds* court acknowledged that the bankruptcy court did not completely lose jurisdiction once a Chapter 11 plan had been confirmed, but noted that the bankruptcy court's role was limited to matters involving execution, implementation, or interpretation of the plan's provisions and to disputes requiring the application of bankruptcy law.  *Id.* at 691.  The confirmed plan in *Leeds* required the debtor to enter into a trust indenture to make distributions to unsecured creditors over a 10-year period.  The trust indenture was funded by a note from the reorganized debtor.  The indenture trustee commenced an adversary proceeding seeking judgment in the sum of the unpaid note based on the debtor's alleged default

under the terms of the trust indenture.  The court concluded it lacked jurisdiction because the dispute concerned breach of the terms of the note and trust indenture—not the plan.

The facts of STI's appeal present an even stronger case than that of *Leeds* that the bankruptcy court lacked jurisdiction.  Like *Leeds*, the STI dispute concerns a breach of the terms of the Liquidating Trust Agreement—not the Plan.  In *Leeds*, the adversary proceeding by the indenture trustee was against the *debtor* who was alleged to be in default of its plan obligation. In STI's case, the defaulting party is the *Trust*, not STI, yet the relief granted to V&K by the Bankruptcy Court was against STI.

Similarly to the *Leeds* case, in *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203 (Bankr. N.D. Ohio 1981), the post-confirmation debtor had affirmed its obligations under a pre-petition collective bargaining agreement as part of its emergence from bankruptcy.  Subsequently, a controversy arose with respect to the collective bargaining agreement and was brought before the bankruptcy court.  The bankruptcy court concluded that its jurisdiction was limited to matters concerning the operation of the plan and not to disputes arising in connection with documents collateral to the plan.  Thus the court lacked jurisdiction because "breach of [a party's obligations under the] collective bargaining agreement does not involve a matter concerning . . . [the] plan." *Cent. States, Se. & Sw. Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.)*, 10 B.R. 203, 204 (Bankr. N.D. Ohio 1981).

Just as in *Leeds* and *Gerken*, the implementation of the Plan here is complete.  The STI Stock and the other assets have been delivered to the Trust and the Trust documents became effective much as the indenture became effective in the *Leeds* case.  The assets of the bankruptcy estate vested in successors to the Debtor or to the Trust and the bankruptcy estates disappeared. V&K made its ATLT "B" Interest election and that election, pursuant to the Plan and Trust

Agreement, became effective and binding on the Trust and V&K when the Plan became effective.  R. 4 at 20.  Inasmuch as the Plan Documents and the Plan itself provide that V&K's entitlement was to its *pro rata* share of ATLT "B" Interests, and in light of the effectiveness of its election to share *pro rata* in those ATLT "B" Interests, the Plan consummation and distribution provisions are completed.

### B. Plan Provisions Show That STI Was to Operate Outside the Jurisdiction of the Bankruptcy Court.

The Bankruptcy Court's ruling is also inconsistent with Plan provisions that clearly remove STI from Bankruptcy Court jurisdiction and allow STI to operate "free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules."[9]

### 1. Key Terms of the Confirmation Order and Plan Provide That STI Operate Outside the Jurisdiction of the Bankruptcy Court.

Pursuant to the Confirmation Order, without qualification, STI may operate its business outside the jurisdiction, and without the interference, of the Bankruptcy Court.  In pertinent part paragraph 18(c) of the Confirmation Order provides:

> each of the Reorganized Subsidiaries and Reorganized STFI respectively, may operate their businesses and may use, acquire, and dispose of property and compromise or settle any claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

R. 5 at 24.  This severing of STI from the bankruptcy is unqualified.

Similarly paragraph 31 of the Confirmation Order provides:

> . . . On the Initial Effective Date, the operation of . . . Reorganized STFI . . . shall become the general responsibility of the new Board of Directors of . . . Reorganized STFI . . . subject to, and in accordance with, its . . . restated certificate of incorporation.

---

[9] *See* Confirmation Order, ¶ 18, R. 5 at 24.

R. 5 at 29.  This provision coincides with paragraph 5.3(f)(ii) of the Plan which provides, again without qualification:

> "On or immediately prior to the Initial Effective Date, STFI will file its New Certificate of Incorporation with the Secretary of State for the State of Delaware in accordance with the relevant sections of the corporate laws of the State of Delaware.  After the Initial Effective Date, Reorganized STFI may amend and restate its New Certificate of Incorporation and other constituent documents as permitted by the laws of the State of Delaware. . . ."

R. 4 at 18.  Pursuant to these provisions, on and after the Initial Effective Date, STI was to operate under the tutelage of its board of directors and in conformity with local law, not under the supervision of the bankruptcy court.

Paragraph 5.3(f) of the Plan provides, without qualification:

> Reorganized STFI shall continue to exist after the Initial Effective Date as a separate legal Entity, with all powers of a corporation under the laws of the State of Delaware, and without prejudice to any right to alter or terminate such existence (whether by merger, acquisition, or otherwise) under the laws of the State of Delaware.

R. 4 at 18.

Some Plan sections do contain a "catch-all" qualifier.  For example, section 5.3(f) provides:

> On and after the Initial Effective Date, Reorganized STFI may operate the STFI Assets and may use, acquire, or dispose of the STFI Assets without the supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions *expressly* imposed by the Plan or Confirmation Order.

R. 4 at 18 (emphasis added).  While the Plan may have contained some "except as otherwise provided" qualifiers, when there is a discrepancy between the Plan and the Confirmation Order, the Confirmation Order controls.  R. 5 at 2 n. 1.  Compare the specific unqualified language in paragraph 18(c) of the Confirmation Order with the generic, boiler-plate qualifier in Plan section 5.3(f).  The Confirmation Order controls.

A reasonable reading of the Plan and the Confirmation Order shows that, even in those sections or paragraphs with qualifiers, there are no *express* restrictions placed upon STI.  For example, paragraph 19 of the Confirmation Order provides:

> As of the Initial Effective Date, all property of the Reorganized Subsidiaries, Reorganized STFI or the ATLT, as applicable, shall be free and clear of all claims, encumbrances, interest, charges, Interests (as defined in the Sale Order), and liens except as *specifically* provided in the Plan or this Confirmation Order or by any stipulation approved by the Bankruptcy Court resolving any objection to the Plan (including the Stipulation).

R. 5 at 25 (emphasis supplied).  Again, there is nothing *specific* in the Plan that suggests that STI was to have any continuing Plan-related responsibility.

### 2.    The Plan's Post-Confirmation Jurisdiction Provisions Should Be Read Narrowly.

The Bankruptcy Court relied upon two provisions in the Confirmation Order in finding post-confirmation jurisdiction.  These provisions purport to grant retained jurisdiction (i) to issue "orders in aid of execution and consummation of the Plan," or (ii) to "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan."  R. 5 at 50-51.  A party's "reliance on . . . amorphous language in the Plan and Confirmation Order as a basis for continuing competence of the bankruptcy court is misplaced.  *This language should be read narrowly* to ensure that the bankruptcy court's role is appropriately as limited as is practicable after confirmation."  *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 59 (E.D.N.Y. 1999) (emphasis supplied); *In re Leeds Bldg. Prods., Inc.*, 160 B.R. 689, 691 at n.3 ("The Court, however, will interpret the language of [the 'provision of the confirmation Order which purports to grant the Court jurisdiction over certain post-confirmation matters'] very narrowly to ensure that its role after confirmation remains limited.").  The Bankruptcy Court failed to follow these sound policies, finding post-confirmation jurisdiction over the V&K stock

issues despite several provisions in the Plan and other Trust documents to the contrary.  The Bankruptcy Court erred in relying upon amorphous, boiler-plate-like jurisdiction retention provisions when other highly specific provision of the Plan expressly terminated STI's continuing responsibility to the Bankruptcy Court.

## II.    The Bankruptcy Court Erred as a Matter of Law in Finding That the Plan Imposed a Duty on STI to Guarantee That All Creditors Received Their Plan Distributions if the Trust Failed to Make Them.

### A.    The Plan Required STI to Issue *All* Securities on the "Initial Effective Date."

Section 5.3(f)(i) of the Plan requires STI to issue *all securities on the "Initial Effective Date"* (June 23, 2004).[10]  Notably, on the Initial Effective Date, STI's Articles of Incorporation only authorized a maximum of ten million (10,000,000) shares of common stock to be issued.  R. 16, Ex. 1 (Amended and Restated Certificate of Corporation Section 4.1).  On the Initial Effective Date, STI issued all ten million (10,000,000) authorized shares to the Trust.  R. 16 at 5.  At that point, STI had no additional authorized shares to issue.  Once STI issued all its shares to the Trust, STI's obligations under the Plan were completed.  If it had been the intent that STI might have to issue additional shares, some shares would have remained authorized, but not issued.  That did not happen.[11]

### B.    STI Did Not Have a Continuing Duty to Issue Additional Shares.

The Bankruptcy Court based much of its determination that it had jurisdiction on section 5.3(f)(i) of the Plan, which states in pertinent part:

---

[10]  R. 5 at 50-51.

[11]  The Confirmation Order provides that "On or following the Initial Effective Date, Reorganized STFI is hereby authorized, empowered, and directed, and shall distribute or issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, including, without limitation, the New STFI Common Stock, which shall be distributed as provided in the Plan."  R. 5 at 26.  The "or following" language does not allow STI to issue additional Stock , however, because STI issued all the Stock that it was authorized to issue on the Initial Effective Date.

> On the Initial Effective Date, Reorganized STI shall issue . . . the new STI Common Stock, which shall be distributed to ATLT for the benefit of holders of ATLT "B" Trust Interests in accordance with Section 3.4(a) and 3.5(a) of the Plan.

R. 4 at 18.

The Bankruptcy Court's rationale depends on the meaning of the concluding phrase of Section 5.3(f)(i)—"in accordance with Section 3.4(a) and 3.5(a) of the Plan." R. 17 at 15-16. The Bankruptcy Court found that the purpose of including the phrase was "to make clear that the distribution from STI was to be in accordance with [those Sections] . . . so that if, in fact, there was a mistake as occurred here, for example, that could be corrected, STI could ultimately be subject to an order correcting the mistake." R. 17, Ex. A at 16. The Bankruptcy Court reasoned that any other interpretation would make the concluding phrase of Section 5.3(f)(i) redundant.[12]

The Bankruptcy Court read too much into the "in accordance with" language. A common sense reading suggests that the language means only that the stock that STI transferred to the Trust would exclusively be eligible for distribution to those who make the "trust interest" election and not to others. It should not be read to mean that STI has a continuing duty to distribute shares if the person making the decision to distribute those shares—the Trust—fails to do what it is supposed to do.[13]

The sentence structure and punctuation of paragraph 5.3(f)(i) supports STI's position. The only comma in that sentence is before the "which."

> On the Initial Effective Date, Reorganized STI shall issue . . . the new STI Common Stock, *which shall be distributed to ATLT for the benefit of holders of*

---

[12] R. 17, Ex. A at 16.

[13] Query, as to what kinds of Trust missteps or worse would STI have responsibility? What if the shares were lost? Stolen? Embezzled? What if the Trust purposefully misallocated the shares? Does the Plan make STI an indemnitor of the Trust beneficiaries in the event of any Trust misfeasance, malfeasance, or mistake?

*ATLT "B" Trust Interests in accordance with Section 3.4(a) and 3.5(a) of the Plan.*

The Bankruptcy Court's interpretation requires a comma after "B Trust Interests" and before the "in accordance with" language. By supplying a comma, the dependent phrase may be lifted out and the section reads: "On the Initial Effective Date Reorganized STI shall issue the new STI Stock [ . . . ] in accordance with sections 3.4a and 3.5a of the Plan."

There is, however, no second comma. The dependent clause is not separated. Therefore, everything that follows the comma before the "which" should be read together as a concluding clause. Read without the second comma, there are two elements to the section. First, STI is to issue its stock to the ATLT on the Initial Effective Date. Second, the stock that STI issues to the Trust is to be held by the Trust for the benefit of creditors who made the B Interest election in the manner set forth in sections 3.4 and 3.5. The sentence does not support an interpretation that STI was to distribute the shares "in accordance with sections 3.4 and 3.5." Without the second comma, section 5.3(f)(i) should not be read as making STI responsible for seeing that its stock is distributed to those who made the elections. Distribution was solely the Trust's responsibility.

## C.   Substantive Consolidation Did Not Subject STI to Bankruptcy Court Jurisdiction.

The Bankruptcy Court reasoned alternatively that STI was obligated to V&K because the Debtors were substantively consolidated for distribution. R. 17 at 17. The substantive consolidation, however, merged the Debtors into one entity only for certain specific Plan implementation purposes. These provisions eliminated inter-debtor claims and created a framework in which all assets and liabilities were pooled so that each creditor would have a single right to participate for distributions from the pool regardless of the legal basis (such as guaranties from affiliated debtors) that such creditor might have to assert the full amount of its

claims against more than one debtor. None of these provisions imposed Plan distribution responsibilities, which are presented with great specificity in the Plan and the Trust documents, upon Reorganized STI. The consolidation provisions certainly do not express a specific intention to impose a continuing duty to creditors upon STI should the Trust misallocate stock years after STI's emergence from bankruptcy. (Plan, § 5.1, "Substantive Consolidation of ATCW Debtors for Plan Purposes Only.")[14] Moreover, carried to its logical extreme, the Bankruptcy Court's reasoning would mean that STI continues, even today, to be jointly liable with the Trust for performance of *all* Plan provisions, not just those relating to the STI stock.

### D.    The Trust—Not STI—Was Obligated to Issue the STI Stock to Creditors.

The overall structure of the Plan does not support the bankruptcy court's interpretation of STI's continuing duty. Contrary to the bankruptcy court's ruling, it is the Trust, not STI, who has the duty to creditors to see that required plan distributions are made. The Plan, read as a whole, makes this clear.

Section 1.16 of the Plan states "'ATLT' means Allegiance Telecom Liquidating Trust or any substitute entities that constitute a means for holding the ATLT Assets." R. 4 at 2. Section 1.18. of the Plan states "ATLT Assets means . . . (b) the new STFI Common Stock . . . ." R. 4 at 2. Section 1.20 of the Plan defines ATLT "B" Trust Interests as "the ownership interest in ATLT, which shall be issued and distributed in accordance with the plan and which shall represent *ATLT's ownership* of the New STFI Common Stock. R. 4 at 2 (emphasis supplied).

Section 3.4(a) of the Plan states "each holder of an allowed ATCW unsecured claim shall receive its pro rata share of . . . either the ATLT "B" Interest or the applicable Cash

---

[14] By its terms, Section 5.1 (i) merged the assets and liabilities of the debtors; (ii) eliminated inter-Debtor guarantees; (iii) combined the obligations of any Debtor and any inter-Debtor guarantees into one claim; (iv) consolidated the joint obligations between two or more Debtors; (v) cancelled claims between Debtors; and (vi) transferred claims against individual Debtors into claims against the collective. R. 4 at 15-16.

Recovery . . . ."[15]   R. 4 at 13.   Notably, this section speaks to creditors receiving ATLT "B" Interests, not STI stock.   As noted previously, ATLT "B" Interests are defined as the "ownership interests in ATLT, which shall be issued and distributed in accordance with the Plan and which shall represent *ATLT's ownership* of the New STFI Common Stock."   R. 4 at 2 (emphasis supplied).

Section 5.4 describes the creation, rights, and duties of the Trust.   R. 4 at 19-20. Section 5.4(c) describes the ATLT Assets to include the New STFI Common Stock.   R. 4 at 19-20.   Section 5.4(a) provides that on the Initial Effective Date "all . . . necessary steps shall be taken to establish ATLT and the beneficial interests therein which shall be for the benefit of allowed claims in Classes 4 and 5 as provided in Sections 3.4 and 3.5 hereof."   R. 4 at 19.

Section 5.4(b) gives the Trust broad discretion to deal with Trust Assets.   R. 4 at 19. Among other things, the ATLT has responsibility to make distributions as contemplated in the Plan and such distributions can be (i) in cash by the conversion of non-cash assets to cash, (ii) a direct distribution of Trust Interests to the Electing Holders or (iii) a direct distribution of the ATLT Assets to the Electing Holders.   R. 4 at 19.   The Plan Administrator (not STI) has fiduciary duties to the Electing Holders.   R. 4 at 19.

Section 5.4(d) provides that on the Effective Date "in accordance with Section 3.4 and 3.5 of the Plan" the Plan Administrator will advise each Electing Holder of the number of Trust Interests to be allocated to such Holder.   R. 4 at 20.   These Trust provisions drive the inescapable conclusion that the creditors' elections to receive Trust Interests were binding and enforceable on the Trust and the Electing Holders on the Initial Effective Date.   Book entries were to be contemporaneously made to reflect ownership of those Interests.   It was the Trust Interests and

---

[15] Section 3.5(a) is a mirror of Section 3.4(a) in respect of the ATI Note Claims.

not the STI Stock that the creditors in these classes of creditors exchanged their claims for on the Initial Effective Date.

The dominant themes of these Plan provisions are:

1.    The Trust settlement and receipt of the STI Stock occurred on the Initial Effective Date.

2.    The Creditor B Interest elections were effective and binding on the Initial Effective Date.

3.    The Creditors exchanged their note claims for B Interests on the Initial Effective Date.

4.    The Trust, not the Creditors, held the STI stock.

5.    STI had no duty in respect of what happened to its stock after it transferred it to the Trust.

6.    After the Initial Effective Date, Electing Holders were to look to the Trust, not the former bankruptcy estates, and certainly not to STI, for their ultimate recoveries of cash, stock, or other property.

In light of the elaborate and well-defined framework that nowhere mentions any role for STI, it is simply beyond reason to conclude, based upon an implication from the "in accordance with" language in 5.3(f), that the drafters of the Plan intended a continuing role or duty for STI.

**III.    The Bankruptcy Court's STI Orders Constitute Impermissible Plan Modifications in Violation of 11 U.S.C. § 1127, Which Only Allows Plan Modification Before Substantial Consummation.**

**A.    The Plan Only Authorized 10 Million Shares of STI Stock; The STI Orders Modify the Plan to Require More.**

The Plan defined new STFI Common Stock as "shares of common stock, par value $.01 per share, to be authorized pursuant to the new certificate of incorporation of Reorganized STFI of which up to *10 million shares shall be issued* pursuant to the Plan *to ATLT*."   R. 4 at 7 (emphasis supplied).   Notably STI's Certificate of Incorporation (dated June 23, 2004) was

amended to *authorize* the issuance of *10 million shares* of STI stock.  R. 16, Ex. 1.  In fact *10 million shares were issued* to ATLT.  R. 16 at 5.

The evidence is uncontroverted that STI issued 10 millions shares on June 23, 2004, and that, as a matter of corporate law, absent a further amendment to the Certificate of Incorporation, STI could not have issued any additional shares.  Despite these provisions, the bankruptcy court ordered STI to issue additional stock, in excess of what the Plan provided.  The bankruptcy court imposed liabilities and duties upon STI not provided for in the Plan.  The bankruptcy court relieved the ATLT of its obligations under the Plan to distribute the stock in accordance with the Plan and put that burden on STI.  These actions constitute impermissible Plan modifications.

## B.    V&K Has no Standing to Request Plan Modification Because It Was Not a Plan Proponent.

V&K does not have standing to request the Bankruptcy Court to modify the Plan.  The Bankruptcy Court violated 11 U.S.C. § 1127(b) when it modified the Plan, at V&K's request, after the Plan had been substantially consummated because V&K is not a plan proponent.  Section 1127(b) provides:

> (b)  The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. . . .

11 U.S.C. § 1127(b).  V&K does not qualify as a section 1127(b) plan proponent.  *See In re Calpine Corp.,* No. 05-60200, 2008 WL 207841, *6 (Bankr. S.D.N.Y., Jan. 24, 2008) ("As the Objecting Shareholders were not the proponents of the confirmed Plan, they are not authorized under Section 1127(b) to modify the confirmed Plan."); *see also In re Planet Hollywood Intern.,* 274 B.R. 391, 400 (Bankr. D. Del. 2001) (holding that a creditor did not have standing to modify a confirmed plan under section 1127(b)); *see also In re Burk Dev. Co., Inc.*, 205 B.R. 778, 799

(Bankr. M.D. La. 1997) ("only the plan proponent or the reorganized debtor, not the U.S. Trustee, has standing to attempt to modify a plan prior to substantial consummation").

> **C.     Under Section 1127, the Plan Cannot be Modified Because It Has Been Substantially Consummated.**

The Plan has been substantially consummated.  The Confirmation Order provided that "The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be, and hereby is, deemed to mean the occurrence of the close of the Initial Effective Date."  R. 5 at 49.  The close of the Initial Effective Date occurred on June 23, 2004 and Notice of the Occurrence of the Date was filed on June 25, 2004.  R. 29 at 206.  Once the Initial Effective Date occurred, the Plan was substantially consummated and could not be modified.  By ordering STI to issue additional stock, in excess of what the Plan provided, the bankruptcy court impermissibly modified the Plan.  The bankruptcy court imposed liabilities and duties upon STI not provided for in the Plan.  The bankruptcy court relieved the ATLT of its obligations under the Plan to distribute the stock in accordance with the Plan and put that burden on STI.  This is an impermissible Plan modification, sought by creditors without standing to request modification, and occurring after the Plan was substantially consummated.

## CONCLUSION

Based on the foregoing, the Court should enter an order (i) reversing the Stock Order; (ii) reversing the Distribution Order; and (iii) granting STI such other and further relief that this Court deems just and proper.

Dated:  April 14, 2008.

HAYNES AND BOONE, LLP

/s/ Jason A. Nagi
Judith Elkin (JE-4112)
Jason A. Nagi (JN-6891)
153 East 53rd Street, Suite 4900
New York, NY 10022
Phone: 212.659.7300

Robert D. Albergotti
901 Main St., Suite 3100
Dallas, TX 75202
Phone: 214.651.5000

*Counsel to Shared Technologies Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all parties listed below via (i) United States first class mail, postage prepaid, and (ii) via e-mail on the 14th day of April, 2008, in accordance with the Federal Rules of Civil Procedure.

/s/ Jason A. Nagi

Ira S. Dizengoff
Abid Qureshi
Kenneth A. Davis
AKIN GUMP STRAUSS HAUER
   & FELD LLP
590 Madison Avenue
New York, NY 10022
E-Mail:  idizengoff@akingump.com

**COUNSEL FOR ALLEGIANCE
TELECOM LIQUIDATING TRUST**

Martin S. Siegel
BROWN RUDNICK BERLACK
   ISRAELS LLP
7 Times Square
New York, NY 10036
E-Mail:  msiegel@brownrudnick.com

Anthony L. Gray
BROWN RUDNICK BERLACK
   ISRAELS LLP
One Financial Center
Boston, MA 02111
Email: agray@brownrudnick.com

**COUNSEL FOR XO HOLDINGS, INC.**

David S. Pegno, Esq.
DEWEY PEGNOT & KRAMARSKY LLP
220 East 42nd Street, 33rd Floor
New York, New York 10017
E-Mail:  dpegno@dpklaw.com

Marshall King
Craig Bruens
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
E-Mail:  cbruens@gibsondunn.com
           mking@gibsondunn.com

**COUNSEL FOR MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED**

Robert D. Albergotti
HAYNES AND BOONE, LLP
901 Main St., Suite 3100
Dallas, TX 75202
Phone: 214.651.5000

Judith Elkin  JE-4112
Jason A. Nagi  JN-6891
HAYNES AND BOONE, LLP
153 East 53rd Street, Suite 4900
New York, NY 10022
Phone: 212.659.7300

*Counsel to Shared Technologies Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                           :
SHARED TECHNOLOGIES INC.,                                  :
                                                           :     Civil Action No. 08-CV-3050 (LAK)
          Plaintiff,                                       :     (ECF Case)
                                                           :
v.                                                         :     Civil Action No. 08-CV-3051 (LAP)
                                                           :     (ECF Case)
ALLEGIANCE TELECOM LIQUIDATING                             :
TRUST, XO HOLDINGS, INC., and                              :
MERRILL LYNCH, PIERCE, FENNER                              :
& SMITH,                                                   :
                                                           :
          Defendants.                                      :
-----------------------------------------------------------x


## **APPENDIX**

1.     11 U.S.C. § 1127

2.     28 U.S.C. § 157

3.     28 U.S.C. § 1334

4.     Federal Rule of Bankruptcy Procedure 8013

**TAB 1**

valid purpose is served by failing to provide exemption from the requirements of similar state laws in a matter under the exclusive jurisdiction of the Federal bankruptcy laws.

Under subsection (d), with respect to a class of equity securities, it is sufficient for acceptance of the plan if the amount of securities voting for the plan is at least two-thirds of the total actually voted.

Subsection (e) provides that no acceptances are required from any class whose claims or interests are unimpaired under the plan or in the order confirming the plan.

Subsection (g) provides that any class denied participation under the plan is conclusively deemed to have rejected the plan. There is obviously no need to submit a plan for a vote by a class that is to receive nothing. But under subsection (g) the excluded class is like a class that has not accepted, and is a dissenting class for purposes of confirmation under section 1130. Senate Report No. 95–989.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S.Code Cong. and Adm.News, p. 576.

**Legislative Statements**

Section 1126 of the House amendment deletes section 1126(e) as contained in the House bill. Section 105 of the bill constitutes sufficient power in the court to designate exclusion of a creditor's claim on the basis of a conflict of interest. Section 1126(f) of the House amendment adopts a provision contained in section 1127(f) of the Senate bill indicating that a class that is not impaired under a plan is deemed to have accepted a plan and solicitation of acceptances from such class is not required.

**Effective and Applicability Provisions**

**1984 Acts.** Amendment by Pub.L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a), formerly 553(a), of Pub.L. 98–353, set out as a note under section 101 of this title.

**CROSS REFERENCES**

Amount and number of claims within class as including claims formerly held by certain creditors, see 11 USCA § 946.

Applicability of subsecs. (a) to (c) and (e) to (g) of this section in Chapter nine cases, see 11 USCA § 901.

## § 1127.    Modification of plan

**(a)** The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

**(b)** The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification

and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

**(c)** The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

**(d)** Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

**(e)** If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time period for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

**(f)(1)** Sections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection (a).

(2) The plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved.
(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2635; Pub.L. 98–353, Title III, § 511, July 10, 1984, 98 Stat. 386; Pub.L. 109–8, Title III, § 321(e), Apr. 20, 2005, 119 Stat. 96.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1978 Acts.** Under subsection (a) the proponent may file a proposal to modify a plan prior to confirmation. In the case of a public company the modifying proposal may be filed prior to approval.

Subsection (b) provides that a party in interest eligible to file a plan may file instead of a plan a proposal to modify a plan filed by another. Under subsection (c) a party in interest objecting to some feature of a plan may submit a proposal to modify the plan to meet the objection.

After a plan has been confirmed, but before its substantial consummation, a plan may be modified by leave of court, which subsection (d) provides shall be granted for good cause. Subsection (e) provides that a proposal to modify a plan is subject to the disclosure requirements of section 1125 and as provided in subsection (f). It provides that a creditor or stockholder who voted for or against a plan is deemed to

have accepted or rejected the modifying proposal. But if the modification materially and adversely affects any of their interests, they must be afforded an opportunity to change their vote in accordance with the disclosure and solicitation requirements of section 1125.

Under subsection (g) a plan, if modified prior to confirmation, shall be confirmed if it meets the requirements of section 1130. Senate Report No. 95–989.

Subsection (a) permits the proponent of a plan to modify it at any time before confirmation, subject, of course, to the requirements of sections 1122 and 1123, governing classification and contents of a plan. After the proponent of a plan files a modification with the court, the plan as modified becomes the plan, and is to be treated the same as an original plan.

Subsection (b) permits modification of a plan after confirmation under certain circumstances. The modification must be proposed before substantial consummation of the plan. The requirements of sections 1122 and 1123 continue to apply. The plan as modified under this subsection becomes the plan only if the court confirms the plan as modified under section 1129 and the circumstances warrant the modification.

Subsection (c) requires the proponent of a modification to comply with the disclosure provisions of section 1125. Of course, if the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances.

Subsection (d) simplifies modification procedure by deeming any creditor or equity security holder that has already accepted or rejected the plan to have accepted or rejected the modification, unless, within the time fixed by the court, the creditor or equity security holder changes this previous acceptance or rejection. House Report No. 95–595.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 576.

**2005 Acts.** House Report No. 109–31(Part I), see 2005 U.S. Code Cong. and Adm. News, p. 88.

**Legislative Statements**

Section 1127(a) of the House amendment adopts a provision contained in the House bill permitting only the proponent of a plan to modify the plan and rejection the alternative of open modification contained in the Senate amendment.

**Effective and Applicability Provisions**

**2005 Acts.** Amendments by Pub.L. 109–8 effective, except as otherwise provided, 180 days after April 20, 2005, and inapplicable with respect to cases commenced under Title 11 before the effective date, see Pub.L. 109–8, § 1501, set out as a note under 11 U.S.C.A. § 101.

**1984 Acts.** Amendment by Pub.L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a), formerly 553(a), of Pub.L. 98–353, set out as a note under section 101 of this title.

**CROSS REFERENCES**

Applicability of subsec. (d) of this section in Chapter nine cases, see 11 USCA § 901.

Modification of plan after confirmation in—

　Chapter thirteen cases, see 11 USCA § 1329.

　Chapter twelve cases, see 11 USCA § 1229.

Modification of plan before confirmation in—

　Chapter thirteen cases, see 11 USCA § 1323.

　Chapter twelve cases, see 11 USCA § 1223.

Modification of plan in Chapter nine cases, see 11 USCA § 942.

## § 1128.　Confirmation hearing

(a) After notice, the court shall hold a hearing on confirmation of a plan.

(b) A party in interest may object to confirmation of a plan.
(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2635.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1978 Acts.** [Section 1129 (now section 1128) ] Subsection (a) requires that there be a hearing in every case on the confirmation of the plan. Notice is required.

Subsection (b) permits any party in interest to object to the confirmation of the plan. The Securities and Exchange Commission and indenture trustees, as parties in interest under section 1109, may object to confirmation of the plan. Senate Report No. 95–989.

### CROSS REFERENCES

Applicability of this section in Chapter nine cases, see 11 USCA § 901.

Confirmation hearing in—

　Chapter thirteen cases, see 11 USCA § 1324.

　Chapter twelve cases, see 11 USCA § 1224.

Duty of United States trustee to file comments with respect to plans and disclosure statements filed in connection with hearings under this section, see 28 USCA § 586.

Right to be heard in cases under this chapter, see 11 USCA § 1109.

## § 1129.　Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

　(1) The plan complies with the applicable provisions of this title.

　(2) The proponent of the plan complies with the applicable provisions of this title.

　(3) The plan has been proposed in good faith and not by any means forbidden by law.

　(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

　(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a

**TAB 2**

CROSS REFERENCES

Conversion fees in bankruptcy, see 28 USCA § 1930.

## § 157.   Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub.L. 98–353, Title I, § 104(a), July 10, 1984, 98 Stat. 340, and amended Pub.L. 99–554, Title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub.L. 103–394, Title I, § 112, Oct. 22, 1994, 108 Stat. 4117; Pub.L. 109–8, Title VIII, § 802(c)(1), Apr. 20, 2005, 119 Stat. 145.)

## HISTORICAL AND STATUTORY NOTES

### Revision Notes and Legislative Reports

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 576.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S. Code Cong. and Adm. News, p. 5227.

**1994 Acts.** House Report No. 103–835, see 1994 U.S. Code Cong. and Adm. News, p. 3340.

**2005 Acts.** House Report No. 109–31(Part I), see 2005 U.S. Code Cong. and Adm. News, p. 88.

### References in Text

Chapter 11, 12, or 13 of title 11, referred to in subsec. (b)(2)(B), is 11 U.S.C.A. § 1101 et seq., 11 U.S.C.A. § 1201 et seq., or 11 U.S.C.A. § 1301 et seq., respectively.

Chapter 15 of title 11, referred to in subsec. (b)(2)(P), is 11 U.S.C.A. § 1501 et seq.

### Codifications

This section as added by Pub.L. 95–598, Title II, § 201(a), Nov. 6, 1978, 92 Stat. 2659, effective June 28, 1984, pursuant to Pub.L. 95–598, Title IV, § 402(b), Nov. 6, 1978, 92 Stat. 2682, as amended by Pub.L. 98–249, § 1(a), Mar. 31, 1984, 98 Stat. 116; Pub.L. 98–271, § 1(a), Apr. 30, 1984, 98 Stat. 163; Pub.L. 98–299, § 1(a), May 25, 1984, 98 Stat. 214; Pub.L. 98–325, § 1(a), June 20, 1984, 98 Stat. 268, set out as a note preceding section 101 of Title 11, Bankruptcy, read as follows:

"§ 157. Times of holding court

"(a) The bankruptcy court at each designated location shall be deemed to be in continuous session on all business days throughout the year.

"(b) Each bankruptcy court may establish by local rule or order schedules of court sessions at designated places of holding court other than the headquarters office of the court. Such schedules may be pretermitted by order of the court.

"(c) Bankruptcy court may be held at any place within the territory served, in any case, on order of the bankruptcy court, for the convenience of the parties, on such notice as the bankruptcy court orders."

Section 402(b) of Pub.L. 95–598 was amended by section 113 of Pub.L. 98–353 by substituting "shall not be effective" for "shall take effect on June 28, 1984", thereby eliminating the addition of section 157 by section 201(a) of Pub.L. 95–598, effective June 27, 1984, pursuant to section 122(c) of Pub.L. 98–353, set out as an Effective Date note under section 151 of this title.

Section 121(a) of Pub.L. 98–353 directed that section 402(b) of Pub.L. 95–598 be amended by substituting "the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 [i.e. July 10, 1984]" for "June 28, 1984". This amendment was not executed in view of the prior amendment to section 402(b) of Pub.L. 95–598 by section 113 of Pub.L. 98–353.

### Effective and Applicability Provisions

**2005 Acts.** Except as otherwise provided, amendments by Pub.L. 109–8 effective 180 days after April 20, 2005, and inapplicable with respect to cases commenced under Title 11 before the effective date, see Pub.L. 109–8, § 1501, set out as a note under 11 U.S.C.A. § 101.

**1994 Acts.** Amendment by Pub.L. 103–394 effective on Oct. 22, 1994, and not to apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994, see section 702 of Pub.L. 103–394, set out as a note under section 101 of Title 11, Bankruptcy.

**1986 Acts.** Amendment by Pub.L. 99–554 effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, set out as a note under section 581 of this title.

**1984 Acts.** Section effective July 10, 1984, see section 122(a) of Pub.L. 98–353, set out as a note under section 151 of this title.

### Separability of Provisions

If any provision of or amendment made by Pub.L. 103–394 or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remaining provisions of and amendments made by Pub.L. 103–394 and the application of such provisions and amendments to any person or circumstance shall not be affected thereby, see section 701 of Pub.L. 103–394, set out as a note under section 101 of Title 11, Bankruptcy.

## CROSS REFERENCES

Supplemental injunctions and power of district court to refer proceedings, see 11 USCA § 524.

## § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals [1]

    (1) from final judgments, orders, and decrees;

    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

    (3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—

**TAB 3**

# PART IV—JURISDICTION AND VENUE

Sec.
1334. Bankruptcy cases and proceedings.

## CROSS REFERENCES

Admiralty and maritime jurisdiction, see 46 USCA § 30101.

Amendment of pleadings to show jurisdiction, see 28 USCA § 1653.

Costs on dismissal for lack of jurisdiction, see 28 USCA § 1919.

Criminal jurisdiction of district courts, see 18 USCA § 3231 et seq.

Criminal procedure, generally, see 18 USCA § 3001 et seq.

Guam, jurisdiction of district court, see 48 USCA § 1424.

Immigration and naturalization, jurisdiction of district courts, see 8 USCA §§ 1329 and 1421.

Jurisdiction in suits to recover share of expenses against handlers of agricultural commodities regardless of amount in controversy, see 7 USCA § 610.

Jurisdictional grounds, statement required in claim for relief, see Fed.Rules Civ.Proc. Rule 8, 28 USCA.

Parties, see Fed.Rules Civ.Proc. Rules 17 to 25, 28 USCA.

Process and service, see Fed.Rules Civ.Proc. Rules 4 and 5, 28 USCA.

Process generally, see 28 USCA § 1691 et seq.

Removal of cases from state courts, see 28 USCA § 1441 et seq.

Virgin Islands, jurisdiction of district court, see 48 USCA § 1612.

## § 1334.  Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent juris-

diction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.  Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

(June 25, 1948, c. 646, 62 Stat. 931; Nov. 6, 1978, Pub.L. 95–598, Title II, § 238(a), 92 Stat. 2667; July 10, 1984, Pub.L. 98–353, Title I, § 101(a), 98 Stat. 333; Oct. 27, 1986, Pub.L. 99–554, Title I, § 144(e), 100 Stat. 3096; Dec. 1, 1990, Pub.L. 101–650, Title III, § 309(b), 104 Stat. 5113; Oct. 22, 1994, Pub.L. 103–394, Title I, § 104(b), 108 Stat. 4109; Apr. 20, 2005, Pub.L. 109–8, Title III, § 324(a), Title VIII, § 802(c)(2), Title XII, § 1219, 119 Stat. 98, 145, 195.)

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1948 Acts.** Based on Title 28, U.S.C., 1940 ed., §§ 41(19) and 371(6) (Mar. 3, 1911, c. 231, §§ 24, par. 19, 256, par. 6, 36 Stat. 1093, 1160).

Changes in phraseology were made.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 576.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S. Code Cong. and Adm. News, p. 5227.

**1990 Acts.** Senate Report No. 101–416, House Report Nos. 101–123, 101–512, 101–514, 101–734, and 101–735, and Statement by President, see 1990 U.S. Code Cong. and Adm. News, p. 6802.

**1994 Acts.** House Report No. 103–835, see 1994 U.S. Code Cong. and Adm. News, p. 3340.

**2005 Acts.** House Report No. 109–31(Part I), see 2005 U.S. Code Cong. and Adm. News, p. 88.

### References in Text

Chapter 15 of title 11, referred to in subsec. (c), is 11 U.S.C.A. § 1501 et seq.

### Codifications

This section was amended by Pub.L. 95–598, Title II, § 238(a), Nov. 6, 1978, 92 Stat. 2668, effective June 28, 1984, pursuant to Pub.L. 95–598, Title IV, § 402(b), Nov. 6, 1978, 92 Stat. 2682, as amended by Pub.L. 98–249, § 1(a), Mar. 31, 1984, 98 Stat. 116; Pub.L. 98–271, § 1(a), Apr. 30, 1984, 98 Stat. 163; Pub.L. 98–299, § 1(a), May 25, 1984, 98 Stat. 214; Pub.L. 98–325, § 1(a), June 20, 1984, 98 Stat. 268, set out as an Effective and Applicability Provisions note preceding section 101 of Title 11, Bankruptcy, to read as follows:

"§ 1334. Bankruptcy appeals

"(a) The district courts for districts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.

"(b) The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.

"(c) A district court may not refer an appeal under that section to a magistrate or to a special master."

Section 402(b) of Pub.L. 95–598 was amended by section 113 of Pub.L. 98–353 by substituting "shall not be effective" for "shall take effect on June 28, 1984", thereby eliminating the amendment by section 238(a) of Pub.L. 95–598, effective June 27, 1984, pursuant to section 122(c) of Pub.L. 98–353, set out as an Effective and Applicability Provisions note under 28 U.S.C.A. § 151.

Section 121(a) of Pub.L. 98–353 directed that section 402(b) of Pub.L. 95–598 be amended by substituting "the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 [i.e. July 10, 1984]" for "June 28, 1984". This amendment was not executed in view of the prior amendment to section 402(b) of Pub.L. 95–598 by section 113 of Pub.L. 98–353.

### Effective and Applicability Provisions

**2005 Acts.** Pub.L. 109–8, Title III, § 324(b), Apr. 20, 2005, 119 Stat. 98, provided that: "This section [amending subsecs. (b) and (e) of this section] shall only apply to cases filed after the date of enactment of this Act [Apr. 20, 2005]."

Except as otherwise provided, amendments by Pub.L. 109–8 effective 180 days after April 20, 2005, and inapplicable with respect to cases commenced under Title 11 before the effective date, see Pub.L. 109–8, § 1501, set out as a note under 11 U.S.C.A. § 101.

**1994 Acts.** Amendment by Pub.L. 103–394 effective on Oct. 22, 1994, and not to apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994, see section 702 of Pub.L. 103–394, set out as a note under section 101 of Title 11, Bankruptcy.

**1986 Acts.** Amendment by Pub.L. 99–554 effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, as amended, set out as a note under section 581 of this title.

**1984 Acts.** Amendment by Pub.L. 98–353, except for subsec. (c)(2), effective July 10, 1984, see section 122(a) of Pub.L. 98–353, set out as a note under section 151 of this title.

Subsec. (c)(2) not applicable with respect to cases under Title 11, Bankruptcy, that are pending on July 10, 1984, or to proceedings arising in or related to such cases, see section 122(b) of Pub.L. 98–353, set out as a note under section 151 of this title.

### Separability of Provisions

If any provision of or amendment made by Pub.L. 103–394 or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remaining provisions of and amendments made by Pub.L. 103–394 and the application of such provisions and amendments to any person or circumstance shall not be affected thereby, see section 701 of Pub.L. 103–394, set out as a note under section 101 of Title 11, Bankruptcy.

### Jurisdiction Over and Transfer of Bankruptcy Cases and Proceedings

Section 115 of Pub.L. 98–353 provided that:

"(a) On the date of the enactment of this Act [July 10, 1984] the appropriate district court of the United States shall have jurisdiction of—

"(1) cases, and matters and proceedings in cases, under the Bankruptcy Act [former Title 11, Bankruptcy] that are pending immediately before such date in the bankruptcy courts continued by section 404(a) of the Act of November 6, 1978 (Public Law 95–598; 92 Stat. 2687) [Pub.L. 95–598, Title IV, § 404(a), Nov. 6, 1978, 92 Stat. 2683, formerly set out as a note preceding section 151 of this title], and

"(2) cases under title 11 of the United States Code [Title 11, Bankruptcy], and proceedings arising under title 11 of the United States Code or arising in or related to cases under title 11 of the United States Code, that are pending immediately before such date in the bankruptcy courts continued by section 404(a) of the Act of November 6, 1978 (Public Law 95–598; 92 Stat. 2687).

"(b) On the date of the enactment of this Act [July 10, 1984], there shall be transferred to the appropriate district court of the United States appeals from final judgments, orders, and decrees of the bankruptcy courts before immediately before such date in the bankruptcy appellate panels appointed under section 405(c) of the Act of November 6, 1978 (Public Law 95–598; 92 Stat. 2685) [formerly set out as a note preceding section 1471 of this title]."

### CROSS REFERENCES

Appointment of clerk for bankruptcy court where warranted by number of cases and proceedings pending, see 28 USCA § 156.

Non-core proceedings not subject to mandatory abstention provisions, see 28 USCA § 157.

Removal of claims related to bankruptcy cases, see 28 USCA § 1452.

Venue, see 28 USCA §§ 1408 and 1409.

**TAB 4**

APPEALS                                                                  **Rule 8015**

## Rule 8012.  Oral Argument

Oral argument shall be allowed in all cases unless the district judge or the judges of the bankruptcy appellate panel unanimously determine after examination of the briefs and record, or appendix to the brief, that oral argument is not needed.  Any party shall have an opportunity to file a statement setting forth the reason why oral argument should be allowed.

Oral argument will not be allowed if (1) the appeal is frivolous; (2) the dispositive issue or set of issues has been recently authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

### ADVISORY COMMITTEE NOTES

This rule is derived from Rule 34(a) F.R.App.P.  The other details of oral argument which are covered by the remaining subdivisions of Rule 34 F.R.App.P. are not in these rules and are left to local rule or order of the court.

### CROSS REFERENCES

Oral argument, see Federal Rules of Appellate Procedure Rule 34, 28 USCA.

## Rule 8013.  Disposition of Appeal; Weight Accorded Bankruptcy Judge's Findings of Fact

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. (As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

### ADVISORY COMMITTEE NOTES

This rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P.  See also Rules 7052(a) and 9014.

### 1987 Amendment

The amendment to this rule conforms the appellate review standard to Rule 52 F.R.Civ.P., as amended in August 1985.

### CROSS REFERENCES

Findings by court, see Fed.Rules Bankr.Proc. Rule 7052, 11 USCA.

Findings by court, see Fed.Rules Civ.Proc. Rule 52, 28 USCA.

Suspension of this rule, see Fed.Rules Bankr.Proc. Rule 8019, 11 USCA.

## Rule 8014.  Costs

Except as otherwise provided by law, agreed to by the parties, or ordered by the district court or the bankruptcy appellate panel, costs shall be taxed against the losing party on an appeal.  If a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court.  Costs incurred in the production of copies of briefs, the appendices, and the record and in the preparation and transmission of the record, the cost of the reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal and the fee for filing the notice of appeal shall be taxed by the clerk as costs of the appeal in favor of the party entitled to costs under this rule. (As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

### ADVISORY COMMITTEE NOTES

This rule is an adaptation of Rule 39(a), (c) and (e) of the F.R.App.P.  Under this rule all costs are taxed by the clerk of the bankruptcy court.

### CROSS REFERENCES

Costs, see Federal Rules of Appellate Procedure Rule 39, 28 USCA.

## Rule 8015.  Motion for Rehearing

Unless the district court or the bankruptcy appellate panel by local rule or by court order otherwise provides, a motion for rehearing may be filed within 10 days after entry of the judgment of the district court or the bankruptcy appellate panel.  If a timely motion for rehearing is filed, the time for appeal to the court of appeals for all parties shall run from the entry of the order denying rehearing or the entry of a subsequent judgment. (As amended Mar. 30, 1987, eff. Aug. 1, 1987.)

### ADVISORY COMMITTEE NOTES

This is an adaptation of the first sentence of Rule 40(a) F.R.App.P.  The filing of a motion for rehearing does not toll the time for taking an appeal to the court of appeals from the district court or the bankruptcy appellate panel.  Appeals from a district court or a bankruptcy appellate panel are to the appropriate court of appeals.  Under Rule 4(a)(4) F.R.App.P. the filing of post-trial motions in the district court has the effect of vitiating any prior notice of appeal and, on the district court's disposition of those post-trial motions, a new appeal period starts.  Rule 4 F.R.App.P. does not, however, contain any provision which stays or otherwise alters the time for taking an appeal to the court of appeals when a motion for rehearing is filed under Rule 8015 with the district court or bankruptcy appellate panel.

### 1987 Amendment

The amendment, which is derived from Rule 8002(b), Rule 4(a)(4) F.R.App.P., and Rule 11.1 Sup.Ct.R., clarifies the effect of the filing of a timely motion for rehearing.  If a