UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SHARED TECHNOLOGIES INC.,                   :

             Appellant,                   :   Civil Action No. 08-CV-3050 (LAK)
                                :   (Lead Case)
                                :

    – against –                   :   Civil Action No. 08-CV-3051 (LAK)
                                :   (Member Case)

ALLEGIANCE TELECOM LIQUIDATING TRUST;   :
XO HOLDINGS, INC., and MERRILL, LYNCH,   :   On appeal from:
PIERCE, FENNER & SMITH,                   :   Case No. 03-13057 (RDD)
                                :   (Bankr. S.D.N.Y.)

           Appellees.                   :

-------------------------------------------------------------x

## BRIEF OF APPELLEE XO HOLDINGS, INC.

Martin S. Siegel (MS-9490)
Emilio A. Galván (EG-0984)
BROWN RUDNICK BERLACK ISRAELS LLP
Seven Times Square
New York, NY 10036
Tel:   (212) 209-4800
Fax:  (212) 209-4801

Attorneys For XO Holdings, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

ISSUE PRESENTED ..................................................................................... 1

SUMMARY ANSWER ................................................................................... 1

STANDARD OF REVIEW ............................................................................... 2

STATEMENT OF THE CASE .......................................................................... 3

ARGUMENT .............................................................................................. 7

    I.     STI Has Failed To Demonstrate Any
          Basis To Disturb The Findings And
          Rulings Of The Bankruptcy Court ..................................................... 8

          A.     The Bankruptcy Court Findings And Rulings........................ 9

          B.     The Bankruptcy Court's Findings And Conclusions
                    Are Consistent With Applicable Legal Authority ................ 12

    II.    The Bankruptcy Court Did Not Amend The Plan,
          But Rather Interpreted And Applied It Correctly
          In Determining That It Had Subject-Matter Jurisdiction ................ 19

ORAL ARGUMENT ..................................................................................... 24

CONCLUSION .......................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Back v. LTV Corp. (In re Chateaugay Corp.),
213 B.R. 633 (S.D.N.Y. 1997) ............................................................... 16

Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.,
903 F.2d 910 (2d Cir. 1990) ............................................................... 23

Central States, Se. & Sw. Areas Pension Fund v. J.T. Gerken Trucking, Inc.
(In re J.T. Gerken Trucking, Inc.),
10 B.R. 203 (Bankr. N.D. Ohio 1981) ................................................. 16

Charter Asset Corp. v. Victory Mkts., Inc.
(In re Victory Mkts., Inc.), 221 B.R. 298 (2d Cir. B.A.P. 1998) ............ 21

Donaldson v. Bernstein,
104 F.3d 547 (3d Cir. 1997) ............................................................... 17

Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.),
120 B.R. 648 (Bankr. E.D.N.Y. 1990) ................................................. 12

Finger v. County of Sullivan Indus. Dev. Agency
(In re Paramount Hotel Corp.),
319 B.R. 350 (Bankr. S.D.N.Y. 2005) ................................................. 16

Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.),
212 F.3d 144 (2d Cir. 2000) ............................................................... 3

Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.),
195 B.R. 548 (Bankr. D. Mass. 1996) ................................................. 17

Guccione v. Bell,
No. 06 Civ. 492, 2006 WL 2032641 (S.D.N.Y. July 20, 2006) ............ 15

Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp.
(In re Blackwood Assocs., L.P.),
153 F.3d 61 (2d Cir. 1998) ............................................................... 3

In re Allegiance Telecom, Inc.,
356 B.R. 93 (Bankr. S.D.N.Y. 2006) ................................................. 12

In re Navigator Gas Transp. PLC,
358 B.R. 80 (Bankr. S.D.N.Y. 2006) ....................................................... 16

In re Shenango Group, Inc.,
501 F.3d 338 (3d Cir. 2007) ........................................................... 2, 3, 12

In re United Merchs. & Mfrs., Inc.,
No. 77-B-1513, 1981 Bankr. LEXIS 4764 (Bankr. S.D.N.Y. Mar. 5, 1981) ......... 21

Int'l Asset Recovery Corp. v. Thomson McKinnon Secs., Inc.,
335 B.R. 520 (S.D.N.Y. 2005) ....................................................... 12, 19

Kassover v. Prism Venture Partners, LLC (In re Kassover),
336 B.R. 74 (Bankr. S.D.N.Y. 2006) ............................................... 9, 17

Klein v. Civale & Trovato, Inc. (In re Lionel Corp.),
29 F.3d 88, 92 (2d Cir. 1994) ............................................................. 19

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
304 F.3d 223 (2d Cir. 2002) ............................................................ 2, 16

Penthouse Media Group v. Guccione (In re General Media, Inc.),
335 B.R. 66 (Bankr. S.D.N.Y. 2005) ............................................ passim

RMI Titanium Co. v. Westinghouse Elec. Corp.,
78 F.3d 1125 (6th Cir. 1996) ............................................................. 14

Truskoski v. ESPN, Inc.,
60 F.3d 74 (2d Cir. 1995) ..................................................................... 2

U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.),
301 F.3d 296 (5th Cir. 2002) ............................................................. 13

United States v. Spallone,
399 F.3d 415 (2d Cir. 2005) ............................................................ 2, 3

Zahn Assocs., Inc. v. Leeds Bldg. Prods., Inc. (In re Leeds Bldg. Prods., Inc.),
160 B.R. 689 (Bankr. N.D. Ga. 1993) ................................................ 16

**Federal Statutes**

11 U.S.C. § 105(a) .............................................................................. 13

11 U.S.C. § 1121 .................................................................................. 3

11 U.S.C. § 1128 ........................................................................................ 3

11 U.S.C. § 1129 .................................................................................... 2, 3

11 U.S.C. § 1141 ........................................................................................ 2

11 U.S.C. § 1142(b) ............................................................................ 13, 17

11 U.S.C. § 1143 ........................................................................................ 2

11 U.S.C. § 1144 ........................................................................................ 2

28 U.S.C. § 157 ......................................................................................... 9

28 U.S.C. § 157(b)(1) .............................................................................. 16

28 U.S.C. §§ 157(b)(2)(A) ....................................................................... 16

28 U.S.C. §§ 157(b)(2)(L) ....................................................................... 16

28 U.S.C. §§ 157(b)(2)(O) ....................................................................... 16

28 U.S.C. § 1334(b) ................................................................................. 16

## **Federal Rules**

Fed. R. Bankr. P. 3020(d) ........................................................................ 13

Fed. R. Bankr. P. 8012 ............................................................................ 24

Fed. R. Bankr. P. 8013 .............................................................................. 2

Appellee XO Holdings, Inc. ("XO"), on behalf of itself and its subsidiary, V&K Holdings, Inc. ("V&K"), hereby submits this brief in opposition to the brief ("App. Br.") of appellant Shared Technologies Inc. ("STI" or "STFI"), in connection with STI's appeal of two orders entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and respectfully states as follows:

## ISSUE PRESENTED

Distilled to its essence, STI's appeal raises the following issue: whether the Bankruptcy Court was correct in finding that it had post-confirmation subject-matter jurisdiction to enter two orders (the "Distribution Orders") compelling reorganized debtor STI to issue shares of its common stock for distribution to V&K on account of certain pre-petition note claims that V&K holds against Allegiance Telecom, Inc., and related debtors, including STI (collectively, "Allegiance" or the "Debtors"), in accordance with, and as required under the Debtors' confirmed and effective plan of reorganization (the "Plan") and the order of the Bankruptcy Court confirming the Plan (the "Confirmation Order").

## SUMMARY ANSWER

Consistent with the Plan and the Confirmation Order, as well as well-established precedent in the Second Circuit and elsewhere, the Bankruptcy Court did not clearly err, or abuse its discretion, in determining that it had post-confirmation subject-matter jurisdiction to enter the Distribution Orders compelling STI to issue the requisite shares because: (1) the Bankruptcy Court retained jurisdiction to do so pursuant to the express terms of the Plan and the Confirmation Order, and (2) the resolution of the dispute raised by STI before the Bankruptcy Court - namely, whether

the Bankruptcy Court had post-confirmation subject-matter jurisdiction to compel STI to issue the requisite shares - clearly had a close nexus to the Plan and the Confirmation Order, as that dispute necessarily affected and involved the interpretation, implementation, and enforcement of the Plan and the Confirmation Order.

### STANDARD OF REVIEW

On appeal, the appellate court reviewing the Distribution Orders will accept the Bankruptcy Court's <u>factual findings</u> unless they are clearly erroneous, and will review only the Bankruptcy Court's conclusions of law <u>de novo</u>. <u>See</u> Fed. R. Bankr. P. 8013; <u>see also</u> <u>Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.</u>), 304 F.3d 223, 228 (2d Cir. 2002) ("We must accept the bankruptcy court's findings of fact unless clearly erroneous; conclusions of law are reviewed <u>de novo</u>.") (citation omitted).

Fundamentally, a confirmed plan is an order of the bankruptcy court. <u>See</u> <u>In re Shenango Group, Inc.</u>, 501 F.3d 338, 345 (3d Cir. 2007) (<u>citing</u> 11 U.S.C. §§ 1129, 1141, 1143, and 1144). Thus, courts of appeals, including for the Second Circuit, have held that a bankruptcy court's interpretation of its own confirmation order and related plan should be reviewed on a clear abuse of discretion standard. <u>See id.</u> at 345-46 (citing cases); <u>see also</u> <u>United States v. Spallone</u>, 399 F.3d 415, 423 (2d Cir. 2005) ("When an issuing judge interprets his own orders, we accord substantial deference to the draftsman, and we will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion."); <u>Truskoski v. ESPN, Inc.</u>, 60 F.3d 74, 77 (2d Cir. 1995) ("It is peculiarly within the province of the district court ... to determine the meaning of its own order, ... and the court's interpretation of its order will not be disturbed absent a clear abuse of discretion.") (citations and internal quotation marks

omitted, alteration in original).   Therefore, the Bankruptcy Court's interpretation of the

Plan should be affirmed absent a clear abuse of discretion, which clearly does not exist

here.[1]

## STATEMENT OF THE CASE

On May 14, 2003, Allegiance Telecom, Inc., and various direct and

indirect subsidiaries (collectively, the "Debtors"), including appellant STI, filed voluntary

petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the

"Bankruptcy Code").   See (R. 29).

Thereafter, on June 10, 2004, the Bankruptcy Court entered the

Confirmation Order confirming the Debtors' Third Amended Joint Plan of Reorganization

---

[1]  STI's effort to deny deference to the Bankruptcy Court's confirmation order does violence to the fundamental framework of the United States Bankruptcy Code and defies logic.   Specifically, STI argues that, because the Plan and Confirmation Order were not drafted by the Bankruptcy Court, they are more "akin to a contract than to a court order."   See App. Br. at 1, n.1.  But, in support of that extraordinary assertion, STI cites only a case in which an appellate court was considering a district court's enforcement of a stipulation.  See id.  (citing Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 66 (2d Cir. 1998)).  By profound contrast, here, a confirmed plan of reorganization, and not a stipulation, is at issue.   Notably, before a bankruptcy court may confirm a plan of reorganization, it must conduct a confirmation hearing as required by 11 U.S.C. § 1128, and enter certain findings that satisfy the requirements enumerated in 11 U.S.C. § 1129.  Thus, to equate a confirmed plan with a stipulation is to misconstrue the fundamental workings of the Bankruptcy Code.   Moreover, STI's argument makes no sense in light of Shenango and Spallone, supra, as a bankruptcy court never drafts and files a reorganization plan, see 11 U.S.C. § 1121 (only debtors and, under certain conditions, other parties in interest may file plans).

Similarly, STI's reliance on Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.), 212 F.3d 144, 151 (2d Cir. 2000), is misplaced.  The appeal in Duplan involved a bankruptcy court's interpretation of a confirmation order entered by a district court.  See Duplan, 212 F.3d at 147-150.  It did not involve, as here, a bankruptcy court's enforcement of its own confirmation order and related plan.

Pursuant to Chapter 11 (R. 4).[2]  On June 23, 2004, the Plan became effective.  Among other things, pursuant to the Confirmation Order (at ¶ 22) and the Plan (at §§ 3.4, 3.5, and 5.1), STI is required to issue all requisite securities for distribution to V&K and other pre-petition unsecured creditors of the Debtors on account of their allowed claims.  See (R. 5 at 26); and (R. 4 at 13, 14 and 15-16).

        In conjunction with the confirmation of the Plan, the Debtors, the Creditors' Committee, and XO entered into a stipulation to settle certain litigation and other disputes among the parties.  On June 23, 2004, the Bankruptcy Court entered an order approving that stipulation (R. 6) (the "June 2004 Order").  Pursuant to the June 2004 Order (at ¶ 9 (R. 6 at 7-8)), STI agreed, and the Bankruptcy Court ordered, that XO and its affiliates (including V&K) had elected to receive New STFI Common Stock under the Plan on account of their ATI Note Claims.  V&K holds ATI Note Claims in the face amount of approximately $92.5 million (the "V&K ATI Note Claims").

        On May 17, 2006, the Allegiance Telecom Liquidating Trust (the "ATLT"), at STI's behest, filed a motion seeking authority to approve a reverse stock split in respect of STI's common stock shares and to approve STI's payment of cash to any creditors who would hold fractional shares as a result of the reverse stock split (R. 26).  The purpose of that stock split was to reduce the number of creditors who would hold shares of New STFI Common Stock once those shares were distributed, to avoid having STI become a publicly-reporting company and incur costs relating thereto.  On July 5, 2006, the Bankruptcy Court entered an order granting that motion (R. 27) (the "Stock Split Order").

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Starting in April 2007, the ATLT, with STI's assistance, began to make distributions of New STFI Common Stock (or cash in lieu thereof to those electing that alternative recovery) to holders of ATI Note Claims who had elected to receive ATLT "B" Trust Interests (i.e., New STFI Common Stock), among other things, on account of their ATI Note Claims.

Notwithstanding the requirements of the June 2004 Order, the Confirmation Order, and the Plan, V&K's broker received a cash recovery on account of the V&K ATI Note Claims, and not the required pro rata share of New STFI Common Stock. After receiving no explanation from the ATLT regarding the missing New STI Common Stock distribution despite numerous requests for information, XO filed a motion on August 30, 2007 seeking, inter alia, entry of an order compelling the ATLT to make the required Plan distribution (R. 7) (the "Motion to Compel"). On October 8, 2007, the ATLT filed an objection to the Motion to Compel (R. 9). On November 5, 2007, XO filed a reply to that objection (R. 10).

At a hearing held on November 6, 2007, after lengthy oral argument, the Bankruptcy Court granted the Motion to Compel and ordered the parties to settle an order reflecting its decision. Subsequently, and consistent with the Bankruptcy Court's rulings, XO, the ATLT, and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), V&K's broker, entered into a stipulation and order, which provides for, among other things, the mechanics for issuance and distribution of the required New STFI Common Stock shares to V&K.

On December 20, 2007, XO filed a motion seeking approval of a stipulation among XO, the ATLT, and Merrill Lynch that, inter alia, reflected the Court's

rulings made on November 6, 2006 confirming V&K's election to receive New STFI Common Stock and compelling its issuance and distribution to V&K (R. 11) (the "Approval Motion").  On January 10, 2008, STI filed an objection to the Approval Motion (R. 14).  On January 28, 2008, XO filed a reply to that objection (R. 15).  Also on January 28, 2008, STI filed a declaration of Renee Hornbaker in support of its objection (R. 16) (the "First Hornbaker Declaration").

On January 29, 2008, the Court held a hearing on the Approval Motion. At the hearing, the Court admitted into evidence the First Hornbaker Declaration and heard lengthy oral argument from the parties.  At the conclusion of the hearing, the Court overruled STI's objection, approved the stipulation and order, and read into the record a detailed bench ruling.

On February 7, 2008, the Bankruptcy Court entered the Order Approving Stipulation and Order Concerning Required Plan Distributions (R. 17) (the "Approval Order"), attaching, as Exhibit "A" thereto, the Bankruptcy Court's "Modified Bench Ruling" (the "Bench Ruling").  Also on February 7, 2008, the Bankruptcy Court entered the stipulation and order as an order of the Court (R. 18) (the "Distribution Stipulation and Order," and together with the Approval Order, the "Distribution Orders").

On February 19, 2008, STI filed notices of appeal of the Distribution Orders (R. 19 and R. 20).  Also on February 19, 2008, STI filed its motion for a stay of the Distribution Orders pending appeal (the "STI Stay Motion") (R. 21), a memorandum of law (R. 22) (the "STI Memorandum of Law"), and a declaration of Renee Hornbaker (R. 23) (the "Second Hornbaker Declaration").

On February 22, 2008, the Bankruptcy Court entered an order scheduling a deadline for responses to the STI Stay Motion of March 13, 2008, and a hearing on the STI Stay Motion for March 18, 2008, at 10 a.m. (R. 24). At the March 18 hearing, the Bankruptcy Court denied the STI Stay Motion. STI has not made any similar stay request before this Court.

## ARGUMENT

By this appeal, STI requests that this Court reverse the Distribution Orders, which compel STI to issue shares of its common stock pursuant to the confirmed Plan of STI and its affiliate Debtors, on account of the V&K ATI Note Claims. STI bases its appeal on the contention that the Bankruptcy Court lacked post-confirmation subject-matter jurisdiction to enter the Distribution Orders. Specifically, STI argues that the Bankruptcy Court: (1) misinterpreted the terms of the Plan that it had previously confirmed, and (2) misapplied the relevant case law. Those arguments should fall on deaf ears.

The linchpin of STI's argument rests on STI's tortured interpretation of the language (and even the punctuation) of the Plan, including a misleading discussion of the use of commas and the effect of dependent clauses in the Plan that is utterly divorced from the purposes and intent of the Plan (i.e., to issue New STFI Common Stock to electing holders of ATI Note Claims, including V&K). See App. Br. at 16 to 18.[3] But, the parties, and this Court, need not engage a grammar or linguistics expert to

---

[3]    With all due respect, STI's "expertise" in connection with dependant clauses and commas must be called into question in light of the third sentence of the second paragraph on page 7 of its brief, which includes so many commas and dependent clauses that it is extremely confusing, if not entirely meaningless. That sentence underscores the dangers of relying too strongly on the sort of analysis that STI offers in order to understand the intent of an order.

understand the Plan.  Rather, the Bankruptcy Court is in the best position to interpret and apply the terms of its own orders, including the Plan and related Confirmation Order.  Thus, consistent with well-established legal authorities, this Court should grant deference to the Bankruptcy Court's well-reasoned and fully-supported interpretation of the Plan and Confirmation Order, which that Court read both to sustain its jurisdiction to adjudicate the dispute raised by STI and to mandate entry of the Distribution Orders.

Contrary to STI's arguments, the Bankruptcy Court correctly applied the controlling case law to conclude that it had post-confirmation subject-matter jurisdiction to enter the Distribution Orders.  The Bankruptcy Court also ruled correctly that the Plan, and related documents, reserved post-confirmation subject-matter jurisdiction to adjudicate the dispute as to whether STI is obligated to issue those shares to V&K.  Similarly, the Bankruptcy Court correctly ruled that it had post-confirmation jurisdiction to implement and enforce the Plan and the Confirmation Order by entering the Distribution Orders.

Simply put, the Bankruptcy Court did not abuse its discretion in interpreting the Plan and the Confirmation Order, and properly held that those documents impose an obligation on STI to issue the requisite shares owed to V&K.  Accordingly, STI's appeal lacks merit and should be dismissed.

## I.    STI Has Failed To Demonstrate Any Basis To Disturb The Findings And Rulings Of The Bankruptcy Court

STI's sole argument on this appeal – that the Bankruptcy Court did not have post-confirmation subject-matter jurisdiction to enter the Distribution Orders – is

patently flawed.[4]  Among other things, the answer to the jurisdictional question rests largely on an interpretation of provisions contained in the Plan and Confirmation Order, which the Bankruptcy Court was in the best position to interpret.  Moreover, the Bankruptcy Court's decision is entirely consistent with the well-established legal authorities.

## A.    The Bankruptcy Court Findings And Rulings

After careful consideration of the parties' extensive submissions and oral presentations, the Bankruptcy Court ruled that it had post-confirmation subject-matter jurisdiction to enter the Distribution Orders.  In doing so, the Bankruptcy Court made, inter alia, the following findings of fact and conclusions of law:

- The Court has post-confirmation subject-matter jurisdiction because the Plan provides for the retention of post-confirmation subject-matter jurisdiction over the particular matter at issue, and  that reservation of jurisdiction is consistent with the jurisdiction granted to the district court and referred to the bankruptcy court by 28 U.S.C. § 157. See Bench Ruling at 6-7, 18 (citing Penthouse Media Group v. Guccione (In re General Media, Inc.), 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005); and Kassover v. Prism Venture Partners, LLC (In re Kassover), 336 B.R. 74, 79-80 (Bankr. S.D.N.Y. 2006)).

- The Plan, at Section 11.1(f) (R. 4 at 35), expressly reserves post-confirmation jurisdiction "to issue such orders in aid of execution and consummation of the plan to the extent authorized by Section 1142 of the Bankruptcy Code."  See Bench Ruling R. 17, Ex. A at 9.

---

[4]    In its Stay Motion, STI raised no other challenges to the Distribution Orders. Notably, the Bankruptcy Court expressly ruled that STI's other objections to the Approval Motion – that granting the Approval Motion would be inequitable and would prejudice third parties – were without merit, which may explain why STI does not now challenge the Distribution Orders on the same grounds.  See Bench Ruling, R. 17, Ex. A at 5-6, 22-27.  In any event, the only issues raised by STI in its appeal of the Distribution Orders relate solely to its jurisdictional challenge.  See STI's designation of issues and items for the record in its appeals filed on February 29, 2008 (docket no. 2601).

- In addition, Section 11.1(i) (R. 4 at 35) of the Plan reserves post-confirmation jurisdiction "to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the plan, any documents contained in the plan supplement, the purchase agreement and the confirmation order." See id. (R. 17, Ex. A at 9-10) And, paragraph 70 of the Confirmation Order provides for the retention of jurisdiction in those situations. See id. (R. 17, Ex. A) at 10.

- The matter before the Bankruptcy Court involved a dispute concerning whether STI had a continued responsibility under the Plan to issue the requisite shares. See id. (R. 17, Ex. A) at 11-12, 15-16.

- The resolution of that dispute required the Bankruptcy Court to interpret the Plan, which, in and of itself, meant that the court had post-confirmation subject-matter jurisdiction. See id. (R. 17, Ex. A) at 12.

- The Bankruptcy Court also had post-confirmation subject-matter jurisdiction because the relief requested by XO in its Approval Motion – namely, the issuance and distribution of the STI shares to V&K – necessarily involved implementation of the Plan. See id. (R. 17, Ex. A) at 15-19.

- The Plan required STI to issue the requisite shares to V&K. See id. (R. 17, Ex. A) at 12-17. Although Section 5.3(f) of the Plan provides that the STFI Assets (including capital stock) vested in Reorganized STFI on the Plan's effective date, that vesting provision was expressly limited by the language "[e]xcept as otherwise provided in the Plan or any related document." Similarly, Section 5.3(f) of the Plan provides that Reorganized STFI shall be permitted to operate, use, acquire, or dispose of the STI Assets "without the supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order." (emphasis added).

- The exceptions referred to in Section 5.3 of the Plan include Sections 5.3(f)(i), 3.4(a), and 3.5(a) of the Plan, and Paragraph 22 of the Confirmation Order. See Bench Ruling, R. 17, Ex. A at 13-15. Pursuant to Section 5.3(f)(i), STI is obligated to issue "all securities" as required under the Plan

(including the New STFI Common Stock) to be distributed for the benefit of holders of ATLT "B" Trust Interests "in accordance with Sections 3.4(a) and 3.5(a) of the Plan."

- Similarly, Paragraph 22 of the Confirmation Order provides that "[o]n or following the Initial Effective Date," STI is obligated to issue "all securities ... required to be issued pursuant to the Plan, including, without limitation, the New STFI Common Stock, which shall be distributed as provided in the Plan." Sections 3.4(a) and 3.5(a) of the Plan do not contain a direction to STI "to distribute a specific, limited number of shares to the ATLT but, rather, a description of the stock recovery election mechanism, the very election that V&K has established it made but which was not honored until as proposed in the [Distribution] Stipulation and Order." See Bench Ruling, R. 17, Ex. A at 14-15 (bracketed text supplied).

- The purpose of the reference in Section 5.3(f)(i) of the Plan to Sections 3.4(a) and 3.5(a) of the Plan "was to make it clear that the distribution from [STI] was to be in accordance with those sections as well, so that if, in fact, there was a mistake, as occurred here, for example, that could be corrected, [STI] could ultimately be subject to an order correcting the mistake." See Bench Ruling, R. 17, Ex. A at 16; see also id., at 22. Further support for that interpretation is reflected in Section 5.1 of the Plan, which provides that the Debtors, including STI, would be substantively consolidated for distribution purposes, including implementation of the election by the creditors to receive distributions of that stock rather than cash. See Bench Ruling, R. 17, Ex. A at 17.

There can be little doubt that the Bankruptcy Court's reading of its own Confirmation Order and related Plan – which were the subject of a confirmation hearing and separate findings of fact and conclusions of law – is the best indication of the intended meaning of both those documents. Moreover, questions concerning the intended meaning of documents clearly constitute factual issues that are entitled to deference on appeal. Thus, there is little, if any, basis for STI to challenge that the Bankruptcy Court got it right.

11

**B.    The Bankruptcy Court's Findings And Conclusions
Are Consistent With Applicable Legal Authority**

It is axiomatic that a bankruptcy court has post-confirmation subject-matter jurisdiction if the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan … [and] the plan must provide for the retention of jurisdiction over the dispute." See General Media, 335 B.R. at 73-74 (citations and internal quotation marks omitted). See also Int'l Asset Recovery Corp. v. Thomson McKinnon Secs., Inc., 335 B.R. 520, 527 (S.D.N.Y. 2005) (in action for "turnover of assets, allegedly owned by the bankruptcy estate, for the benefit of its creditors" court has "related to" jurisdiction "even a decade post-confirmation"); Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.), 120 B.R. 648, 657 (Bankr. E.D.N.Y. 1990) ("The courts retain jurisdiction to oversee the reorganization process even after a plan of reorganization is confirmed.  The Second Circuit has rejected the contention that adoption of the reorganization plan ousted the court of jurisdiction.") (citations and internal quotation marks omitted); In re Allegiance Telecom, Inc., 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006) (same).[5]

---

[5]    STI cites Shenango, supra, for the proposition that a court need not place "independent weight" on a retention of jurisdiction clause in a plan. See App. Br. at 7. But, of course, that logic does not imply that such a provision is irrelevant to the inquiry. Rather, it means only that the court must also consider separately whether it has subject-matter jurisdiction under the Bankruptcy Code and related statutes. As discussed in the text above, and as reasoned by the Bankruptcy Court, the assertion of jurisdiction here is consistent with the applicable legal authorities. Notably, in Shenango, the court agreed that jurisdiction existed with respect to the dispute at issue because the dispute "relat[ed] to the debtor's liability for fully funding" benefit increases to a pension plan, as required by the plan of reorganization. See id. at 344. Similarly, here, the question is the extent to which a debtor (i.e., STI) is responsible for issuing stock that is required to be distributed to satisfy claims pursuant to a confirmed plan of reorganization.

STI appears to concede that the Bankruptcy Court properly relied on General Media to determine whether the Bankruptcy Court had post-confirmation subject-matter jurisdiction. See App. Br. at 8. STI also does not appear to contest that the Bankruptcy Court properly ruled that, in accordance with General Media, both the Plan and the Confirmation Order contain express jurisdiction reservation provisions. See Plan, §§ 11.1(f) and 11.1(i) (R. 4 at 35) (court retained post-confirmation jurisdiction to enter "orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code" and "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan"); accord Confirmation Order, Part II, ¶¶ 70(vi), 70(ix) (R. 5 at 50, 51).[6]

STI instead argues that the Bankruptcy Court misapplied the General Media standard by ruling that it had post-confirmation subject-matter jurisdiction to decide STI's obligations under the Plan and to enter the Distribution Orders to implement and enforce the Plan and the Confirmation Order. See App. Br. at 9 to 10. That argument, however, is sorely flawed and must fail.

---

[6]    The Bankruptcy Code also contemplates that the Bankruptcy Court may exercise post-confirmation jurisdiction to compel a debtor or non-debtor to perform plan-related obligations. Section 1142(b) of the Bankruptcy Code authorizes the Bankruptcy Court to "direct the debtor and any other necessary party to execute or deliver … any instrument required to effect a transfer of property dealt with by a confirmed plan … and to perform any other act … that is necessary for the consummation of the plan." See 11 U.S.C. § 1142(b); U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.), 301 F.3d 296, 306 (5th Cir. 2002) (Section 1142(b) "empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan.") (footnote omitted); see also 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 3020(d) ("Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.").

As a preliminary matter, the Bankruptcy Court correctly found that the dispute before it concerned whether STI is obligated to issue the requisite shares to V&K pursuant to the Plan and the Confirmation Order. See Bench Ruling, R. 17, Ex. A at 11-12, 15-16. STI gamely tries to evade the Bankruptcy Court's factual finding that the dispute concerned STI's obligations under the Plan. STI wrongly characterizes the relevant dispute as simply between V&K and the ATLT regarding the obligation to honor V&K's election to receive a STI stock distribution under the Plan rather than a cash recovery. See App. Br. at 7 - 9.

But STI's characterization of the relevant dispute is disingenuous, and the Bankruptcy Court's factual determination in that regard is not clearly erroneous. See RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir. 1996) ("Where a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings unless they are clearly erroneous." (citations omitted)). By granting the Motion to Compel, the Bankruptcy Court already had adjudicated the dispute between V&K and the ATLT in V&K's favor. That ruling is reflected in the Distribution Stipulation and Order, agreed to by and among the ATLT, XO, and Merrill Lynch. Moreover, STI objected only to the Approval Motion. In making that objection, STI attacked the Bankruptcy Court's subject-matter jurisdiction on the grounds that STI no longer is obligated to issue the requisite stock to V&K pursuant to the Plan. Indeed, STI devotes most of its brief to explaining its position on that very dispute. See App. Br. at 10 - 17. Accordingly, the Bankruptcy Court's finding that the dispute before it concerned STI's Plan obligations is not clearly erroneous.

The Bankruptcy Court also correctly ruled that the resolution of that dispute required the court to interpret the Plan, which, in and of itself, meant that it had post-confirmation subject-matter jurisdiction pursuant to General Media and other apposite case law. See id. at 12; see also Guccione v. Bell, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006) ("Given the language and scope of these provisions, adjudicating Guccione's severance claim will require determining whether that claim is precluded by the reorganization plan. This dispute therefore affects the interpretation of the plan, which is all that is necessary to satisfy the 'close nexus' requirement for jurisdiction."); General Media, 335 B.R. at 73-74 (a bankruptcy court may exercise post-confirmation subject-matter jurisdiction if there exists a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan") (emphasis supplied, citation and internal quotation marks omitted).

As explained below, the Bankruptcy Court correctly interpreted the Plan and the Confirmation Order (and did not abuse its discretion in doing so) to rule that STI is obligated to issue the requisite shares in accordance with the terms of those documents. Based on that proper interpretation, the Bankruptcy Court correctly ruled that it also had post-confirmation subject-matter jurisdiction because the relief requested in the Approval Motion – issuance and distribution of the STI shares to V&K – necessarily involved the implementation and enforcement of the Plan and concerned

Plan distribution issues.  See Bench Ruling R. 17, Ex. A at 15-19;  see also General

Media, 335 B.R. at 73-74.[7]

In an abortive effort to salvage its lack-of-jurisdiction argument, STI relies

on two cases in which post-confirmation jurisdiction was not found – i.e., Zahn Assocs.,

Inc. v. Leeds Bldg. Prods., Inc. (In re Leeds Bldg. Prods., Inc.), 160 B.R. 689 (Bankr.

N.D. Ga. 1993); and Central States, Se. & Sw. Areas Pension Fund v. J.T. Gerken

Trucking, Inc. (In re J.T. Gerken Trucking, Inc.), 10 B.R. 203 (Bankr. N.D. Ohio 1981).

STI's reliance on those cases, however, is entirely misplaced.  Leeds and Gerken

simply stand for the proposition that bankruptcy courts lack post-confirmation jurisdiction

to adjudicate disputes arising under documents collateral to the confirmed plan of

reorganization.  See Leeds, 160 B.R. at 691 (adversary proceeding asserting claims

under promissory note); J.T. Gerken Trucking, 10 B.R. at 204-05 (matter involving post-

---

[7]    Not only does the Bankruptcy Court's jurisdictional ruling comport with General
Media, but the ruling is also proper under binding Second Circuit precedent
holding that "[a] bankruptcy court retains post-confirmation jurisdiction to interpret
and enforce its own orders, particularly when disputes arise over a bankruptcy
plan of reorganization."  Petrie Retail, 304 F.3d at 230; see also 28 U.S.C. §
1334(b) (district courts and bankruptcy court by referral have bankruptcy
jurisdiction over "all civil proceedings arising under title 11, or arising in or related
to cases under title 11."); 28 U.S.C. § 157(b)(1) (bankruptcy court may enter
appropriate orders and judgments in all "core proceedings"); 28 U.S.C. §§
157(b)(2)(A), (L), and (O) (core proceedings include, without limitation, "matters
concerning the administration of the estate," "confirmations of plans," and "other
proceedings affecting the liquidation of assets of the estate or the adjustment of
the debtor-creditor … relationship"); Back v. LTV Corp. (In re Chateaugay Corp.),
213 B.R. 633, 637-38 (S.D.N.Y. 1997); In re Navigator Gas Transp. PLC, 358
B.R. 80, 84-86 (Bankr. S.D.N.Y. 2006) (same); Finger v. County of Sullivan
Indus. Dev. Agency (In re Paramount Hotel Corp.), 319 B.R. 350, 356 (Bankr.
S.D.N.Y. 2005) (same).  Pursuant to that authority, the Bankruptcy Court properly
exercised post-confirmation subject-matter jurisdiction because the Distribution
Orders simply enforced the Bankruptcy Court's own Confirmation Order (which
required STI to issue requisite Plan securities after the Plan's effective date) and
June 23, 2004 stipulation and order (R. 6 at 7-8) (the "June 2004 Order") (which
approved STI's and the other Debtors' stipulation with XO that, among other
things, confirmed V&K's election to receive STI common stock under the Plan).
See Confirmation Order, Part II, ¶ 22 (R. 5 at 26); June 2004 Order, ¶ 9 (R. 6 at
7-8).

confirmation breach under pre-petition collective bargaining agreement).    But the underlying dispute here, by contrast, directly relates to the Plan and the Confirmation Order and concerns Plan implementation and distribution issues.

As the Bankruptcy Court correctly noted (see Bench Ruling R. 17, Ex. A at 20-22), the apposite case law fully supports the exercise of post-confirmation subject-matter jurisdiction by the Bankruptcy Court under those circumstances.  See, e.g., Donaldson v. Bernstein, 104 F.3d 547, 553 (3d Cir. 1997) (court had post-confirmation subject-matter jurisdiction to enforce plan provisions against debtor's former principals); Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.), 195 B.R. 548, 556 (Bankr. D. Mass. 1996) (same in respect of debtor).[8]

Each of the circumstances that STI contends would cause an appellate court to find that the Bankruptcy Court misapplied General Media all are either irrelevant or untrue.  As shown, the relevant dispute concerns STI's obligation under the Plan to issue shares to be distributed to V&K.  The fact that V&K did not receive those shares

---

[8]    STI argues disingenuously that the Bankruptcy Court relied only on case law in which courts did not find that they had post-confirmation jurisdiction.  See App. Br. at 8-9.  Conveniently, STI fails to mention that it also relied on those very cases (including General Media) in its objection to the Approval Motion.  In fact, the Bankruptcy Court did not rely on those cases, other than to apply the jurisdiction test reflected in General Media and Kassover.    Rather, the Bankruptcy Court properly distinguished them on their facts.  See Bench Ruling, R. 17, Ex. A at 19-20.  Furthermore, STI's astounding assertion (see App. Br. at 8-9) that courts in only a "few cases" have exercised post-confirmation jurisdiction, and only in respect of debtors, belies reality.  As demonstrated above, the Bankruptcy Code, and extensive case law authority from throughout the country, expressly provide that bankruptcy courts may exercise post-confirmation jurisdiction, even in respect of non-debtors.  See, e.g., 11 U.S.C. § 1142(b) (bankruptcy courts have the power to "direct the debtor and any other necessary party to execute or deliver ... any instrument required to effect a transfer of property dealt with by a confirmed plan ... and to perform any other act ... that is necessary for the consummation of the plan"); Donaldson, 104 F.3d at 553 (court had post-confirmation jurisdiction over effort to enforce plan provisions against debtor's former principals).  In any event, STI is a debtor who agreed to be bound by the Plan and was reorganized pursuant to the Plan.

because of a mistake involving the ATLT, and not STI, does not obviate STI's obligation to issue the shares, particularly given that STI agreed to the express terms of the Plan documents requiring it to issue all requisite securities on or after the Plan's effective date, without exception.

Furthermore, contrary to certain statements and inferences in STI's papers, STI is not a stranger to these Plan matters. See App. Br. at 9 (alleging without basis that STI is a "remote part[y]" with respect to the Plan and attempting to suggest falsely that STI was not a "debtor" in the Allegiance bankruptcy). In fact, STI was a debtor that reorganized under the terms of the Plan, and is obligated under the terms of the Plan and the Confirmation Order to issue all requisite securities on or after the Plan's effective date. And, in direct conflict with STI's current argument that it has no place before the Bankruptcy Court, STI was the willing subject, if not the moving force, behind the ATLT motion in 2006, which resulted in the Bankruptcy Court's Stock Split Order relating to New STFI Common Stock issued under the Plan. At that time, STI was nowhere to be heard complaining that the Bankruptcy Court did not have jurisdiction to address matters relating to STI's stock. Moreover, STI participated in the 2007 distribution of ATLT "B" Trust Interests and cash in lieu thereof. See First Hornbaker Declaration, ¶¶ 36, 46 (R. 16 at 7, 8-9) (STI paid the ATLT $2.8 million to buy back certain fractional shares and worked with its transfer agent to register creditors' names on the distributed shares and reflect their ownership on the stock transfer ledger).

Nor did the Debtors' estates "cease to exist" on the Plan's effective date; rather, under the Plan, the ATLT acquired certain rights and assumed certain

obligations of the estates thereafter under the terms of the Plan, and it and the Plan Administrator became the fiduciaries of the Debtors' general unsecured creditors. <u>See</u> Plan, § 5.4 (R. 4 at 19-23). In any event, the Plan's effectiveness and substantial consummation, as well as the passage of time since the Plan's effective date, do not deprive the Bankruptcy Court of post-confirmation subject-matter jurisdiction to implement, enforce, or interpret the Plan's terms. <u>See</u>, <u>e.g.</u>, <u>Int'l Asset Recovery</u>, 335 B.R. at 525-26; <u>General Media</u>, 335 B.R. at 73-74.

Based on the foregoing, STI's legal arguments must fail. The Bankruptcy Court's conclusion that it retained jurisdiction to adjudicate the dispute before it was correct, in accord with the governing legal authorities, and must be sustained.

## II.    The Bankruptcy Court Did Not Amend The Plan, But Rather Interpreted And Applied It Correctly In Determining That It Had Subject-Matter Jurisdiction

Contrary to STI's suggestion, the Bankruptcy Court did not amend the Plan by entering the Distribution Orders. Rather, the Distributions Orders are specifically crafted to implement and enforce the Plan according to its terms. STI's arguments to the contrary simply misapprehend to provisions of the Plan and Confirmation Order.[9]

To begin, the Plan and the Confirmation Order do <u>not</u> provide that STI was only obligated to issue shares on the Plan's effective date. Rather, the Plan and

---

[9] STI argues, App. Br. at 21-23, that the Distribution Orders violate Section 1127 of the Bankruptcy Code or are contrary to the Plan's terms on the merits. STI, however, failed to raise those merit-based arguments before the Bankruptcy Court. Therefore, it has waived those arguments, and may not now assert them on appeal. <u>Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)</u>, 29 F.3d 88, 92 (2d Cir. 1994). In any event, as explained herein, the Bankruptcy Court did <u>not</u> modify the Plan in any way by entering the Distribution Orders. Rather, the Bankruptcy Court correctly ruled that it had post-confirmation subject-matter jurisdiction to enter orders implementing the terms of the Plan.

the Confirmation Order expressly provide that STI has a duty to issue the requisite stock to V&K even after the Plan's effective date. The Plan requires STI "[o]n the Initial Effective Date ... shall issue all securities ... required to be issued pursuant to the Plan, including, without limitation, New STFI Common Stock, which shall be distributed to the ATLT for the benefit of Holders of ATLT 'B' Trust Interests in accordance with Sections 3.4(a) and 3.5(a) of the Plan." Plan, § 5.3(f)(i) (R. 4 at 18) (emphasis supplied). Sections 3.4(a) and 3.5(a) of the Plan set forth, inter alia, the distribution and election provisions pursuant to which V&K and other creditors of the Debtors, elected to receive distributions of ATLT "B" Trust Interests (representing the ATLT's ownership interests in STI common stock shares) and not cash recoveries. See id., §§ 1.20, 3.4(a), 3.5(a) (R. 4 at 2, 13-14). See also id., § 5.4(b) (R. 4 at 19) (the Plan Administrator for the ATLT may "directly distribute ... the New STFI Common Stock underlying the ATLT Trust Interests to the Holders of the respective ATLT Trust Interests"). The Confirmation Order, whose terms govern if there is a conflict with the terms of the Plan, expressly provides that STI must distribute or issue all securities required to be issued under the Plan "[o]n or following the Initial Effective Date ... ." See Confirmation Order, Part II, ¶¶ 4, 22 (R. 5 at 18-19, 26). Furthermore, the Plan provides that the Debtors (including STI) were deemed substantively consolidated effective as of the Plan's effective date "for purposes of ... distribution under the Plan." Plan, § 5.1 (R. 4 at 16).

The plain meaning of those provisions is that, even after the Plan's effective date, STI must issue all securities required by the Plan, which securities must be distributed in accordance with the distribution and election provisions of §§ 3.4(a)

and 3.5(a).[10]  Because shares of STI's common stock were not issued and distributed

in accordance with V&K's election pursuant to the Plan (and the June 2004 Order), the

inescapable conclusion is that the Bankruptcy Court retains jurisdiction to compel STI to

issue the requisite shares so that the required Plan distribution to V&K may be made.[11]

Second, the Bankruptcy Court's interpretation of the Plan does not result

in STI "guaranteeing" or "indemnifying" the ATLT's Plan-related obligations.  Sections

5.3(f)(i), 3.4(a), and 3.5(a) of the Plan and ¶ 22 of the Confirmation Order provide that

STI, without exception, must issue the requisite securities to effectuate the distribution

and election terms of the Plan.  In fact, V&K did not receive its STI shares distribution

as required.  The Bankruptcy Court's exercise of subject-matter jurisdiction to enter the

---

[10]  STI posits that the Bankruptcy Court's interpretation of Section 5.3(f)(i)'s "in accordance with Sections 3.4(a) and 3.5(a)" clause "reads too much" into the language.  See App. Br. at 16.  But, the Bankruptcy Court did not do so.  Rather, it properly chose not to ignore that language.  STI then seems to suggest that the Bankruptcy Court should have ignored that clause because it is "redundant" or "repetitive."  See id.  In any case, this Court would decline STI's request that it ignore clear Plan terms, as doing so would run afoul of well-established canons of contractual construction.  See In re United Merchs. & Mfrs., Inc., No. 77-B-1513, 1981 Bankr. LEXIS 4764, at *12-13, 21 (Bankr. S.D.N.Y. Mar. 5, 1981) ("a plan is a kind of contract … [and] disputed provisions should be interpreted in light of general contract principles. … [i]t is axiomatic that a contract is not to be construed so as to reject any of its words as surplusage, or as mere gratuitous inclusions"); see also Charter Asset Corp. v. Victory Mkts., Inc. (In re Victory Mkts., Inc.), 221 B.R. 298, 304 (2d Cir. B.A.P. 1998) (same).

[11]  Other provisions of the Plan, as the Bankruptcy Court correctly noted, further support that interpretation, and foreclose the alternative interpretation touted by STI.  See Plan, § 5.3(f) (R. 4 at 18) (vesting of assets in STI on the Plan's effective date and STI's use of those assets thereafter are expressly subject to other provisions and restrictions in the Plan and other documents, including the Confirmation Order).  Accordingly, STI's reliance on Section 5.3(f) and related provisions in the Confirmation Order (See App. Br. at 112-14) as somehow vitiating its obligation to issue the shares for distribution to V&K is spurious.  Moreover, that reliance is entirely misplaced given the fact that those shares are not STI's assets or property, but rather belong to creditors of STI and the other Debtors, including V&K.

Distribution Orders requiring STI to issue the requisite shares to V&K merely implement and enforce those sections of the Plan.[12]

Third, STI, not the ATLT, is obligated to <u>issue</u> requisite securities, including New STFI Common Stock, to V&K and other holders of ATI Note Claims. <u>See</u> Plan, § 5.3(f)(i) (R. 4 at 18); Confirmation Order, Part II, ¶ 22 (R. 5 at 26). Not only may the ATLT and the Plan Administrator distribute ATLT "B" Trust Interests to creditors electing to receive them, but the Plan Administrator may also, <u>inter alia</u>, "directly distribute ... the New STFI Common Stock underlying the ATLT Trust Interests to the Holders of the respective ATLT Trust Interests." Plan, § 5.4(b) (R. 4 at 19).

The Plan did <u>not</u> require that distributions be made on the Plan's effective date. Rather, those distributions could be made on the later to occur of that effective date or allowance of the pertinent claim, a date that the Court may order, or "as soon as practicable thereafter." <u>Id.</u> at §§ 3.4(a), 3.5(a) (R. 4 at 13, 14). Pursuant to Section 5.4(d) of the Plan, prior to making distributions, the Plan Administrator was obligated only to notify holders as to the number of interests to be allocated to them and to reflect their interests through book entries made by the Plan Administrator. In any event, creditors did not receive distributions of ATLT "B" Trust Interests, in the form of New STI Common Stock shares or cash recoveries in lieu thereof, until April 2007, well after the June 23, 2004 effective date.

Fourth, STI's Plan-related obligations are not limited just to issuing 10 million shares of New STFI Common Stock. <u>See</u> Plan at § 1.82 (R. 4 at 7) (defining

---

[12]    Based on the foregoing, STI's effort to conjure inapt scenarios in which it might be responsible if the stock was lost, stolen, or embezzled is absurd. <u>See</u> App. Br. at 17, n.13. Notably, to the extent STI needs reminding, the Distribution Orders do not concern lost, stolen, or embezzled stock, and those issues are not before this Court.

that term to mean "shares of common stock, par value $0.01 per share, to be authorized pursuant to the New Certificate of Incorporation of Reorganized STFI, of which up to 10,000,000 shares shall be issued pursuant to the Plan to ATLT"). STI must, inter alia, issue all securities required to be distributed to holders of ATI Note Claims, not just New STI Common Stock. See id. at § 5.3(f)(i) (R. 4 at 18); Confirmation Order, Part II, ¶ 22 (R. 5 at 26).

In any event, STI has not, in fact, issued "up to 10,000,000 shares" of New STI Common Stock pursuant to the Plan. In July 2006, before any distributions of STI common stock were made, STI effectuated a reverse stock split, which included, among other things, a reduction of the number of shares authorized to be issued by STI pursuant to an amendment to STI's charter from 10 million to 1 million. See First Hornbaker Declaration, ¶¶ 31, 33 (R. 16 at 6). That reverse stock split was pursuant to the Stock Split Order, which the ATLT obtained from the Bankruptcy Court at STI's urging and for STI's benefit. See id., ¶¶ 28, 30 (R. 16 at 5,6). After that reverse stock split was effectuated and fractional shareholders paid by STI, only approximately 951 shares of STI common stock were then distributed to the Debtors' creditors starting in April 2007. See id. at ¶ 37 (R. 16 at 7).

STI has not made any showing that the Court abused its discretion in interpreting the Plan. Furthermore, as described, the Court correctly interpreted the Plan and the Confirmation Order. The alternative interpretation touted by STI is not reasonable because of the terms and purpose of the Plan and the Confirmation Order and because it would improperly require provisions of those documents to be ignored. See Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co., 903 F.2d 910, 912 (2d Cir.

1990) ("We are mindful in interpreting the agreements that, as with all contracts, they should be construed, if possible, so as to give effect to all of their material provisions.").

## ORAL ARGUMENT

Pursuant to Fed. R. Bankr. P. 8012, Appellee XO respectfully requests that this Court hear oral argument in connection with this appeal, as oral argument should aid the Court in its understanding of the bankruptcy issues raised by this appeal.

## CONCLUSION

WHEREFORE, XO respectfully requests that this Court:   (1) deny the relief that STI has requested by this appeal; (2) dismiss the appeal with prejudice; (3) affirm the Distribution Orders in all respects; and (4) grant to XO and its affiliates (including, without limitation, V&K) such other relief as is just and appropriate.

Dated:  New York, New York
        May 2, 2008


                                        **BROWN RUDNICK BERLACK ISRAELS LLP**

                                        By: /s/ Martin S. Siegel
                                            Martin S. Siegel (MS-9490)
                                            Emilio A. Galván (EG-0984)
                                        Seven Times Square
                                        New York, NY 10036
                                        Tel:   (212) 209-4800

                                        Attorneys For XO Holdings, Inc.


# 8182098 v4

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SHARED TECHNOLOGIES INC.,                        :

               Appellant,                            :   Civil Action No. 08-CV-3050 (LAK)
                                   :   (Lead Case)

                                   :

     – against –                              :   Civil Action No. 08-CV-3051 (LAK)
                                   :   (Member Case)

ALLEGIANCE TELECOM LIQUIDATING TRUST; :
XO HOLDINGS, INC., and MERRILL, LYNCH,  :   On appeal from:
PIERCE, FENNER & SMITH,               :   Case No. 03-13057 (RDD)
                                   :   (Bankr. S.D.N.Y.)

             Appellees.                        :

-----------------------------------------------------------------x

## APPENDIX

Martin S. Siegel (MS-9490)
Emilio A. Galván (EG-0984)
BROWN RUDNICK BERLACK
ISRAELS LLP
Seven Times Square
New York, NY 10036
Tel:   (212) 209-4800
Fax:  (212) 209-4801

Attorneys For XO Holdings, Inc.

1.    11 U.S.C. § 105(a)

2.    11 U.S.C. § 1121

3.    11 U.S.C. § 1128

4.    11 U.S.C. §1129

5.    11 U.S.C. § 1141

6.    11 U.S.C. § 1142(b)

7.    11 U.S.C. § 1143

8.    11 U.S.C. § 1144

9.    28 U.S.C. § 157

10.   Fed. R. Bankr. P. 3020(d)

11.   Fed. R. Bankr. P. 8012

# TAB 1

Westlaw.

11 U.S.C.A. § 105                                                                                    Page 1

C

**Effective:[See Notes]**

United States Code Annotated Currentness
   Title 11. Bankruptcy (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)
        → **§ 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

(d) The court, on its own motion or on the request of a party in interest--

   (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and

   (2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that--

      (A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or

      (B) in a case under chapter 11 of this title--

         (i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

         (ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

         (iii) sets the date by which a party in interest other than a debtor may file a plan;

         (iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 105                                                                                      Page 2

**(v)** fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or

**(vi)** provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

CREDIT(S)

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2555; Pub.L. 98-353, Title I, § 118, July 10, 1984, 98 Stat. 344; Pub.L. 99-554, Title II, § 203, Oct. 27, 1986, 100 Stat. 3097; Pub.L. 103-394, Title I, § 104(a), Oct. 22, 1994, 108 Stat. 4108; Pub.L. 109-8, Title IV, § 440, Apr. 20, 2005, 119 Stat. 114.)

11 U.S.C.A. § 105, 11 USCA § 105

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

**c**

**Effective:[See Notes]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 11. Reorganization (Refs & Annos)
      Subchapter II. The Plan (Refs & Annos)
        → § 1121. Who may file a plan

**(a)** The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.

**(b)** Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

**(c)** Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if--

**(1)** a trustee has been appointed under this chapter;

**(2)** the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

**(3)** the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

**(d)(1)** Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

**(2)(A)** The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

**(B)** The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

**(e)** In a small business case--

**(1)** only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is--

**(A)** extended as provided by this subsection, after notice and a hearing; or

**(B)** the court, for cause, orders otherwise;

**(2)** the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

**(3)** the time periods specified in paragraphs (1) and (2), and the time fixed in <u>section 1129(e)</u> within which the plan shall be confirmed, may be extended only if--

    **(A)** the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;

    **(B)** a new deadline is imposed at the time the extension is granted; and

    **(C)** the order extending time is signed before the existing deadline has expired.

CREDIT(S)

(<u>Pub.L. 95-598</u>, Nov. 6, 1978, 92 Stat. 2631; <u>Pub.L. 98-353, Title III, § 506</u>, July 10, 1984, 98 Stat. 385; <u>Pub.L. 99-554, Title II, § 283(u)</u>, Oct. 27, 1986, 100 Stat. 3118; <u>Pub.L. 103-394, Title II, § 217(d)</u>, Oct. 22, 1994, 108 Stat. 4127; <u>Pub.L. 109-8, Title IV, §§ 411</u>, 437, Apr. 20, 2005, 119 Stat. 106, 113.)

11 U.S.C.A. § 1121, 11 USCA § 1121

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

11 U.S.C.A. § 1128

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 11. Bankruptcy (Refs & Annos)
      Chapter 11. Reorganization (Refs & Annos)
         Subchapter II. The Plan (Refs & Annos)
           ➡ **§ 1128. Confirmation hearing**

  **(a)** After notice, the court shall hold a hearing on confirmation of a plan.

  **(b)** A party in interest may object to confirmation of a plan.

CREDIT(S)

  (Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2635.)

11 U.S.C.A. § 1128, 11 USCA § 1128

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

▷

**Effective:[See Notes]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    ⌐▣ Chapter 11. Reorganization (Refs & Annos)
      ⌐▣ Subchapter II. The Plan (Refs & Annos)
        ➡ **§ 1129. Confirmation of plan**

**(a)** The court shall confirm a plan only if all of the following requirements are met:

**(1)** The plan complies with the applicable provisions of this title.

**(2)** The proponent of the plan complies with the applicable provisions of this title.

**(3)** The plan has been proposed in good faith and not by any means forbidden by law.

**(4)** Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

**(5)(A)(i)** The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

**(ii)** the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

**(B)** the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

**(6)** Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

**(7)** With respect to each impaired class of claims or interests--

**(A)** each holder of a claim or interest of such class--

**(i)** has accepted the plan; or

**(ii)** will receive or retain under the plan on account of such claim or interest property of a value, as of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 1129                                                                                      Page 2

the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

**(B)** if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

**(8)** With respect to each class of claims or interests--

    **(A)** such class has accepted the plan; or

    **(B)** such class is not impaired under the plan.

**(9)** Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--

    **(A)** with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

    **(B)** with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive--

        **(i)** if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

        **(ii)** if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

    **(C)** with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

        **(i)** of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

        **(ii)** over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

        **(iii)** in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

    **(D)** with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

**(10)** If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(11)** Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

**(12)** All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

**(13)** The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

**(14)** If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

**(15)** In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--

  **(A)** the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

  **(B)** the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

**(16)** All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**(b)(1)** Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**(2)** For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

**(A)** With respect to a class of secured claims, the plan provides--

  **(i)(I)** that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

  **(II)** that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

  **(ii)** for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

  **(iii)** for the realization by such holders of the indubitable equivalent of such claims.

**(B)** With respect to a class of unsecured claims--

  **(i)** the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

  **(ii)** the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

**(C)** With respect to a class of interests--

  **(i)** the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

  **(ii)** the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**(c)** Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

**(d)** Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

**(e)** In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

CREDIT(S)

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2635; Pub.L. 98-353, Title III, § 512, July 10, 1984, 98 Stat. 386; Pub.L. 99-554, Title II, §§ 225, 283(v), Oct. 27, 1986, 100 Stat. 3102, 3118; Pub.L. 100-334, § 2(b), June 16, 1988, 102 Stat. 613; Pub.L. 103-394, Title III, § 304(h)(7), Title V, § 501(d)(32), Oct. 22, 1994, 108 Stat. 4134, 4146; Pub.L. 109-8, Title II, § 213(1), Title III, § 321(c), Title IV, § 438, Title VII, § 710, Title XII, § 1221(b), Title XV, § 1502(a)(8), Apr. 20, 2005, 119 Stat. 52, 95, 113, 127, 196, 216.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 1129

11 U.S.C.A. § 1129, 11 USCA § 1129

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 5

Westlaw.

11 U.S.C.A. § 1141                                                                                      Page 1

**c**

**Effective:[See Notes]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 11. Reorganization (Refs & Annos)
      Subchapter III. Postconfirmation Matters (Refs & Annos)
        → **§ 1141. Effect of confirmation**

**(a)** Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

**(b)** Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

**(c)** Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

**(d)(1)** Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

  **(A)** discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

    **(i)** a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

    **(ii)** such claim is allowed under section 502 of this title; or

    **(iii)** the holder of such claim has accepted the plan; and

  **(B)** terminates all rights and interests of equity security holders and general partners provided for by the plan.

**(2)** A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title.

**(3)** The confirmation of a plan does not discharge a debtor if--

  **(A)** the plan provides for the liquidation of all or substantially all of the property of the estate;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(B)** the debtor does not engage in business after consummation of the plan; and

**(C)** the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

**(4)** The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

**(5)** In a case in which the debtor is an individual--

**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if--

**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date; and

**(ii)** modification of the plan under section 1127 is not practicable; and

**(C)** unless after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that--

**(i)** section 522(q)(1) may be applicable to the debtor; and

**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

**(6)** Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt--

**(A)** of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

**(B)** for a tax or customs duty with respect to which the debtor--

**(i)** made a fraudulent return; or

**(ii)** willfully attempted in any manner to evade or to defeat such tax or such customs duty.

CREDIT(S)

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2638; Pub.L. 98-353, Title III, § 513, July 10, 1984, 98 Stat. 387; Pub.L. 109-8, Title III, §§ 321(d), 330(b), Title VII, § 708, Apr. 20, 2005, 119 Stat. 95, 101, 126.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 1141, 11 USCA § 1141

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 6

Westlaw.

11 U.S.C.A. § 1142                                                                                  Page 1

**c**

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 11. Reorganization (Refs & Annos)
      Subchapter III. Postconfirmation Matters (Refs & Annos)
        → **§ 1142. Implementation of plan**

  **(a)** Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

  **(b)** The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

CREDIT(S)

  (Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2639; Pub.L. 98-353, Title III, § 514(a), (c), (d), July 10, 1984, 98 Stat. 387.)

11 U.S.C.A. § 1142, 11 USCA § 1142

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

.



C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 11. Reorganization (Refs & Annos)
      Subchapter III. Postconfirmation Matters (Refs & Annos)
        ➔ **§ 1143. Distribution**

If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

CREDIT(S)

  (Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2639.)

11 U.S.C.A. § 1143, 11 USCA § 1143

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 8

Westlaw.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 11. Reorganization (Refs & Annos)
      Subchapter III. Postconfirmation Matters (Refs & Annos)
        → **§ 1144. Revocation of an order of confirmation**

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall--

  **(1)** contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

  **(2)** revoke the discharge of the debtor.

CREDIT(S)

  (Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2639; Pub.L. 98-353, Title III, § 515, July 10, 1984, 98 Stat. 387.)

11 U.S.C.A. § 1144, 11 USCA § 1144

END OF DOCUMENT

# TAB 9

Westlaw.

c

**Effective:[See Notes]**

United States Code Annotated Currentness
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
     Part I. Organization of Courts (Refs & Annos)
       Chapter 6. Bankruptcy Judges (Refs & Annos)
        → **§ 157. Procedures**

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to--

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(M)** orders approving the use or lease of property, including the use of cash collateral;

**(N)** orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

**(O)** other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

**(P)** recognition of foreign proceedings and other matters under chapter 15 of title 11.

**(3)** The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

**(4)** Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

**(5)** The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

**(c)(1)** A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

**(2)** Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

**(d)** The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

**(e)** If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

CREDIT(S)

(Added Pub.L. 98-353, Title I, § 104(a), July 10, 1984, 98 Stat. 340, and amended Pub.L. 99-554, Title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub.L. 103-394, Title I, § 112, Oct. 22, 1994, 108 Stat. 4117; Pub.L. 109-8, Title VIII, § 802(c)(1), Apr. 20, 2005, 119 Stat. 145.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 157

28 U.S.C.A. § 157, 28 USCA § 157

**END OF DOCUMENT**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 10

## Rule 3020.    Deposit; Confirmation of Plan in a Chapter 9 Municipality or Chapter 11 Reorganization Case

**(a) Deposit**

In a chapter 11 case, prior to entry of the order confirming the plan, the court may order the deposit with the trustee or debtor in possession of the consideration required by the plan to be distributed on confirmation.  Any money deposited shall be kept in a special account established for the exclusive purpose of making the distribution.

**(b) Objection to and hearing on confirmation in a Chapter 9 or Chapter 11 case**

**(1) Objection**

An objection to confirmation of the plan shall be filed and served on the debtor, the trustee, the proponent of the plan, any committee appointed under the Code, and any other entity designated by the court, within a time fixed by the court.  Unless the case is a chapter 9 municipality case, a copy of every objection to confirmation shall be transmitted by the objecting party to the United States trustee within the time fixed for filing objections.  An objection to confirmation is governed by Rule 9014.

**(2) Hearing**

The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002.  If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

**(c) Order of confirmation**

**(1)** The order of confirmation shall conform to the appropriate Official Form. If the plan provides for an injunction against conduct not otherwise enjoined under the Code, the order of confirmation

**Rule 3020**

shall (1) describe in reasonable detail all acts enjoined; (2) be specific in its terms regarding the injunction; and (3) identify the entities subject to the injunction.

(2) Notice of entry of the order of confirmation shall be mailed promptly to the debtor, the trustee, creditors, equity security holders, other parties in interest, and, if known, to any identified entity subject to an injunction provided for in the plan against conduct not otherwise enjoined under the Code.

(3) Except in a chapter 9 municipality case, notice of entry of the order of confirmation shall be transmitted to the United States trustee as provided in Rule 2002(k).

**(d) Retained power**

Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.

**(e) Stay of confirmation order**

An order confirming a plan is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 22, 1993, eff. Aug. 1, 1993; Apr. 29, 1999, eff. Dec. 1, 1999; Apr. 23, 2001, eff. Dec. 1, 2001.)

# TAB 11

# Rule 8012.  Oral Argument

Oral argument shall be allowed in all cases unless the district judge or the judges of the bankruptcy appellate panel unanimously determine after examination of the briefs and record, or appendix to the brief, that oral argument is not needed.  Any party shall have an opportunity to file a statement setting forth the reason why oral argument should be allowed.

Oral argument will not be allowed if (1) the appeal is frivolous;  (2) the dispositive issue or set of issues has been recently authoritatively decided;  or (3) the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.