Robert D. Albergotti
HAYNES AND BOONE, LLP
901 Main St., Suite 3100
Dallas, TX 75202
Phone: 214.651.5000

Judith Elkin  JE-4112
Jason A. Nagi  JN-6891
HAYNES AND BOONE, LLP
153 East 53rd Street, Suite 4900
New York, NY 10022
Phone: 212.659.7300

*Counsel to Shared Technologies Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :
SHARED TECHNOLOGIES INC.,                                :
                                                         :      Civil Action No. 08-CV-3050 (LAK)
    Appellant,                                          :      (Lead Case)
                                                         :
v.                                                       :      Civil Action No. 08-CV-3051 (LAK)
                                                         :      (Member Case)
ALLEGIANCE TELECOM LIQUIDATING                           :
TRUST, XO HOLDINGS, INC., and                            :      On appeal from:
MERRILL LYNCH, PIERCE, FENNER                            :      Case No. 03-13057 (RDD)
& SMITH,                                                 :          (Bankr. S.D.N.Y.)
                                                         :
    Appellees.                                          :
---------------------------------------------------------x

# REPLY BRIEF OF APPELLANT SHARED TECHNOLOGIES INC.

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... iii

Summary of the Argument ........................................................................................................... 1

Argument .................................................................................................................................... 1

    I.    The Bankruptcy Court's Interpretation of the Text of the Plan and the Confirmation Order are Conclusions of Law Reviewed *De Novo* .......................... 2

    II.    The Bankruptcy Court Exceeded Its Limited Post-Confirmation Jurisdiction by Compelling STI to Issue Additional Shares of STI Stock to V&K ..................... 2

        A.    Post-Confirmation, the Bankruptcy Court Lacked Extensive Jurisdiction ................................................................................................ 2

        B.    The Plan was Consummated on the Effective Date When All the Debtors' Assets were Transferred to the Trust and When Electing Holders Became Vested in Their Trust Interests ......................................... 3

            i.    The Trust Succeeded to All the Debtors' Estates' Assets, Including the STI Stock, on the Initial Effective Date ..................... 3

            ii.    Once the Trust Succeeded to the Estate Assets and Distributed the Trust Assets, Plan Activities Were Complete and Only Trust Activities Remained ............................................................................ 5

    III.    The Language of the Plan and the ATLT Agreement Do Not Support the Bankruptcy Court's Orders Requiring STI to Issue Additional Stock .................... 5

        A.    Both the ATLT Agreement and the Plan Vest the ATLT with Responsibility for Trust Assets .................................................................. 6

            i.    The Trust – Not STI – Was Obligated to Issue the ATLT Assets to Creditors ................................................................ 6

            ii.    Plan Section 5.3(f)(i) Should be Read in the Context of the Plan as a Whole ........................................................................ 6

        B.    Once STI Transferred Its Interests, the ATLT Beneficiaries had no Claim Against STI ...................................................................................... 8

        C.    V&K's Appropriate Remedy for ATLT's Breach is Money Damages ....... 9

    IV.    The Bankruptcy Court's STI Orders Impermissibly Modified the Plan in Violation of 11 U.S.C. § 1127 ............................................................................ 9

Request for Oral Argument ...................................................................................................... 10

Conclusion ............................................................................................................................... 10

Certificate of Service ............................................................................................................... 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Baker v. Dorfman*,
   239 F.3d 415 (2d Cir. 2000)..................................................................................................10

*In re Blackwood Associates, L.P.*,
   153 F.3d 61 (2d Cir. 1998)......................................................................................................3

*Charter Asset Corporation v. Victory Markets, Inc. (In re Victory Markets, Inc.)*
   221 B.R. 298 (2d Cir. B.A.P. 1998)........................................................................................2

*In re Colony Hill Associates*,
   111 F.3d 269 (2d Cir. 1997)....................................................................................................2

*Coogan v. Smyers*,
   134 F.3d 479 (2d Cir. 1998)..................................................................................................10

*In re Duplan Corporation*,
   212 F.3d 144 (2d Cir. 2000)....................................................................................................2

*Pritzker v. Yari*
   42 F.3d 53 (1st Cir. 1994).......................................................................................................9

*Readco, Inc. v. Marine Midland Bank*,
   81 F.3d 295 (2d Cir. 1996)....................................................................................................10

*In re Shenango Group, Inc.*,
   501 F.3d 338 (3d Cir. 2007)................................................................................................2, 3

*Sunbeam Products, Inc. v. Wing Shing Products*,
   311 B.R. 378 (S.D.N.Y. 2004)............................................................................................2, 9

*In re United Merchants and Manufacturers, Inc.*,
   No. 77-B-1513, 1981 Bankr. LEXIS 4764 (March 5, 1981) ..................................................2

**FEDERAL STATUTES**

11 U.S.C. § 1141(a) ......................................................................................................................2, 9

11 U.S.C. § 1142..........................................................................................................................3, 4

**FEDERAL RULES**

Fed. R. Bankr. P. 8012..................................................................................................................10

Fed. R. Bankr. P. 8013 ...................................................................................................................2

ARTICLES

3 Farnsworth on Contracts § 12.4 ................................................................................................9

Restatement (Second) of Contracts § 364(1)(b) .........................................................................9

Shared Technologies Inc. ("STI") hereby submits this Reply Brief (the "Reply") to the Brief of Appellee XO Holdings, Inc. (the "XO Brief") filed by XO Holdings, Inc. ("XO") on behalf of XO and its subsidiary V&K Holdings, Inc. ("V&K").[1] STI appeals two orders entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"): (1) the Distributions Order (R. 17); and (2) Stock Order (R. 18). In support of its appeal, STI respectfully states:

## SUMMARY OF THE ARGUMENT

When the Allegiance Telecom Liquidating Trust (the "ATLT" or "Trust") made a mistake and did not distribute STI Stock to V&K, XO came to the Bankruptcy Court in November 2007 seeking relief against the Trust on behalf of its subsidiary, V&K. STI was in no way responsible for the mistake and XO did not request relief from STI. The Bankruptcy Court could and should have resolved the dispute between V&K and the Trust without involving STI. Instead, the Bankruptcy Court went beyond its limited post-confirmation jurisdiction and the terms of the Plan and the Liquidating Trust Agreement (the "ATLT Agreement") to fashion a remedy under which STI pays for the Trust's mistake.

## ARGUMENT

The issue before the Court is whether the Bankruptcy Court erred in finding that it had post-confirmation jurisdiction to resolve a dispute between the ATLT and V&K by ordering STI to issue additional shares of STI stock to V&K in contravention of the Plan and the ATLT Agreement, which provided that (i) STI had no continuing duty to issue shares once it transferred all of its stock to the Trust; and (ii) the Trust had the sole responsibility for the stewardship and distribution of the ATLT Assets pursuant to the Plan and ATLT Agreement. STI has extensively

---

[1] On April 14, 2008, STI filed its Brief of Appellant Shared Technologies Inc. (the "STI Brief"). Capitalized terms herein are defined in the STI Brief.

set forth its arguments in the STI Brief.  In this Reply, STI clarifies a few of its points and addresses a few points raised by XO.

**I.      The Bankruptcy Court's Interpretation of the Text of the Plan and the Confirmation Order are Conclusions of Law Reviewed *De Novo.***

The district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  Fed. R. Bankr. P. 8013; *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997).  Specifically, the bankruptcy court's interpretation of the text of the plan of reorganization and the confirmation order are conclusions of law reviewed de novo.  *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000).[2]  The Plan is a binding contract between STI, the Trust and V&K.  11 U.S.C. § 1141(a); *Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.)*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998).  As with any contract, the starting point for review of a plan is its plain language.  *In re Victory Markets,* 221 B.R. at 303.  When contract terms are unambiguous, contract interpretation is a question of law to be reviewed *de novo* on appeal to the district court.  *Sunbeam Prods., Inc. v. Wing Shing Prods.*, 311 B.R. 378, 391 (S.D.N.Y. 2004).

**II.     The Bankruptcy Court Exceeded Its Limited Post-Confirmation Jurisdiction by Compelling STI to Issue Additional Shares of STI Stock to V&K.**

   **A.     Post-Confirmation, the Bankruptcy Court Lacked Extensive Jurisdiction.**

The scope of bankruptcy court jurisdiction diminishes with Plan confirmation.  Post-confirmation jurisdiction requires "a close nexus to the bankruptcy plan or proceeding sufficient

---

[2] XO argues that "[f]undamentally, a confirmed plan is an order of the bankruptcy court" and as such the bankruptcy court's interpretation of the plan is entitled to special deference. XO Brief, p. 2 (citing *In re Shenango Group, Inc.*, 501 F.3d 338, 345 (3d Cir. 2007)). Although the Third Circuit made the statement in dicta that a "confirmed plan of reorganization is an order of the bankruptcy court," *Shenango*, 501 F.3d at 345, the Second Circuit courts consistently have stated that a plan is a contract. *See e.g.*, *Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.)*, 221 B.R. 298, 303 (2d Cir. B.A.P. 1998) ("a confirmed plan holds the status of a binding contract as between the debtor and its creditors") (citing 11 U.S.C. § 1141(a)); *In re United Merchs. and Mfrs., Inc.*, No. 77-B-1513, 1981 Bankr. LEXIS 4764 (March 5, 1981) ("a plan is a kind of contract"). Where a document is more akin to

to uphold bankruptcy court jurisdiction." *In re Shenango Group, Inc.*, 501 F.3d 338, 343 (3d Cir. 2007).  On the Effective Date of the Plan (June 23, 2004, the "Effective Date" or "Initial Effective Date") the Trust was settled: the Debtors transferred virtually all of their assets (including the STI Stock) to the Trust, the beneficiaries were identified, and the Trustee was appointed.  After that, the Bankruptcy Court lacked extensive continuing jurisdiction.

A majority of the cases that the Bankruptcy Court cited to support its jurisdiction over STI actually determined that jurisdiction did not exist despite factual circumstances similar to the case at bar.[3]  The cases that did exercise post-confirmation jurisdiction generally involved debtors that failed, after confirmation, to comply with the terms of the plan or involved supervision of trust distributions.[4]  In this instance, although STI is a Reorganized Debtor, STI is not the party that failed to fulfill the terms of the Plan post-confirmation.  Instead it is the Trust that has failed to comply with the terms of the Plan and to make the correct Trust distributions.

> **B.** **The Plan was Consummated on the Effective Date When All the Debtors' Assets were Transferred to the Trust and When Electing Holders Became Vested in Their Trust Interests.**
>
> ***i.*** ***The Trust Succeeded to All the Debtors' Estates' Assets, Including the STI Stock, on the Effective Date.***

Although the Plan, at Section 11.1(f) (R. 4 at 35), reserves post confirmation jurisdiction "to issue orders in aid of the execution and consummation of the plan to the extent authorized by Section 1142 of the Bankruptcy Code," the STI Orders exceed this jurisdiction.  Section 1142(b) allows the court to:

> direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of

---

a contract than to a court order, the bankruptcy court's interpretation of the document is entitled to no special deference.  *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 66 (2d Cir. 1998).
[3] *See* STI Brief at 9 n. 6.
[4] *See* STI Brief at 9 n. 7.

property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142.  The Plan became effective on June 23, 2004.  By that time, STI had already issued 100% of its Stock to the Trust transfer the New STI Stock to the Trust.  STI had no further obligations under the Plan.

In addition, virtually all other Plan implementation events occurred on the Effective Date. The ATLT Agreement provided that all of the bankruptcy estate assets would vest in the Trust on the Initial Effective Date and the Debtors' interest in such assets would be extinguished.

> Transfer of Property to Plan Administrator.  Pursuant to the Plan, the Debtors and the Plan Administrator hereby establish on behalf of the ATLT Beneficiaries the ATLT, and the Debtors hereby transfer, assign, and deliver to the Plan Administrator all of their right, title, and interest in and to any and all of the ATLT Assets, including the XO Common Stock, the New STFI Common Stock, the Litigation Cash, the Available Cash, and all other assets of the Estates that are not Acquired Assets,[5] free and clear of any Lien, Claim or Interest in such assets, except for any claims against, or obligations of, the ATLT under the Stipulation and Order Settling Certain Disputes Between Allegiance, Allegiance Worldwide and the Official Committee of Unsecured Creditors, entered June ___, 2004 (the "Stipulation") or the Asset Purchase Agreement referred to therein (the "APA").  The Plan Administrator agrees to accept and hold the ATLT Assets in trust for the ATLT Beneficiaries, subject to the terms of this ATLT Agreement.
>
> Title to ATLT Assets.
> (a)     The ATLT Assets shall be transferred to the ATLT on the Initial Effective Date.
>
> (b)     . . . Upon the transfer of the ATLT Assets, the Plan Administrator shall succeed to all of the Debtors' right, title and interest in the ATLT Assets and the Debtors will have no further interest in or with respect to the ATLT Assets or the ATLT.

R. 6, Ex. B, §§ 1.01, 1.02(a)-(b).

---

[5] Prior to the Plan Effective Date, the Debtors sold the Allegiance Telecom business (except STI) to XO.  The reference to Acquired Assets in the Trust Agreement is to make clear that the Debtors were not transferring anything to the Trust that had already been sold to XO.  All other assets, however, were conveyed to the Trust on the Plan Effective Date.

### ii.    Once the Trust Succeeded to the Estate Assets and Distributed the Trust Assets, Plan Activities Were Complete and Only Trust Activities Remained.

Pursuant to the ATLT Agreement, the Plan provided for Electing Holders to receive three sets of Trust Interests. R. 4 at 13, 14 (Plan §§ 3.4(a), 3.5(a)). The ATLT Agreement provides:

> WHEREAS, the Plan provides for, among other things, the issuance to the Holders of Allowed (a) ATCW Unsecured Claims and (b) ATI Unsecured Claims (collectively, the "ATLT Beneficiaries") (i) *that do not elect or otherwise receive the Cash Recovery* under the Plan one hundred percent (100%) of the ATLT A Trust Interests and ATLT B Trust Interests and (ii) one hundred percent (100%) of the ATLT C Trust Interests.

R. 6, Ex. B, p. 1 (emphasis supplied). As explained in detail in the STI Brief, the distribution of the Trust Interests happened on the Plan Effective Date just as the Debtors' interests in the Trust Assets were extinguished on the Effective Date. Thereafter, virtually all Plan, as opposed to Trust activities, were complete, as was substantial Plan consummation. All post-Effective Date activity in the Bankruptcy Court was Trust-related, not Plan-related. For example, the Trust could have exercised its discretion to sell the STI Stock and deliver cash to the Electing Holders. Electing Holders could have received cash from the Trust, even if they received ATLT "B" Interests on the Effective Date. Any dispute regarding such would be a Trust administration activity, not a Plan consummation or implementation activity.

The gravaman of XO's complaint is that the Trust made a mistake. If XO had received cash because the Trust had sold the STI stock, its complaint would be over Trust administration. Likewise, here XO's issue is one of Trust administration, not Plan implementation. The Bankruptcy Court had no jurisdiction to grant relief against STI.

### III.    The Language of the Plan and the ATLT Agreement Do Not Support the Bankruptcy Court's Orders Requiring STI to Issue Additional Stock.

The plain language and the overall structure of the Plan do not support the bankruptcy court's interpretation of STI's continuing duty to issue shares. The purpose and intent of the

Plan and the ATLT Agreement was for STI to issue all of its shares (the "New STFI Common Stock") to the Trust at which point STI emerged from its bankruptcy proceeding. STI was free of bankruptcy–related constraints on its freedom to act. All the other bankruptcy estate assets vested in the Trust. The remaining Plan functions became Trust responsibilities.

**A.    Both the ATLT Agreement and the Plan Vest the ATLT with Responsibility for Trust Assets.**

The Trust, not STI, has the duty to see that required distributions are made to the holders of Trust Interests that vested on the Effective Date. Therefore, V&K's claim is properly against the Trust, not STI, and the Trust, not STI, should provide the remedy.

*i.    The Trust—Not STI—Was Obligated to Issue the ATLT Assets to Creditors.*

The ATLT Agreement provides that "the Plan Administrator shall liquidate and convert to Cash, or otherwise distribute to the ATLT Beneficiaries, the ATLT Assets, make timely distributions and not unreasonably prolong the duration of the ATLT." R. 6, Ex. B, § 3.01. The Plan provides that the "ATLT shall, in accordance with the ATLT Agreement, (i) wind-down the Debtors' affairs, including making Distributions as contemplated in the Plan, (ii) (a) liquidate, by conversion to Cash or other methods or (b) distribute directly to Holders of ATLT Trust Interests, the ATLT Assets . . . ." R. 4 at § 5.4(b). The STI stock was an ATLT Asset.

*ii.    Plan Section 5.3(f)(i) Should be Read in the Context of the Plan as a Whole.*

The issues in this appeal arise in part because in one Plan provision the Plan drafters included a clause containing a passive voice construction and confusing punctuation:

> **Issuance of New Securities.**  On the Initial Effective Date, Reorganized STFI shall issue all securities, notes, instruments, certificates, and other documents of Reorganized STFI required to be issued pursuant to the Plan, including, without limitation, the New STFI Common Stock, <u>which shall be distributed to the ATLT for the benefit of Holders of ATLT "B" Trust Interests in accordance with Sections 3.4(a) and 3.5(a) of the Plan</u>.

R. 4 at 18 (Plan § 5.3(f)(i)) (emphasis added).  The Bankruptcy Court misinterpreted the "which shall be distributed" and "in accordance with Sections 3.4(a) and 3.5(a)" language of § 5.3(f)(i) to mean that STI should be responsible for correcting ATLT's mistakes in distributing the stock.

The Bankruptcy Court based much of its determination that it had jurisdiction on this section of the Plan finding that the purpose of the concluding phrase "in accordance with Section 3.4(a) and 3.5(a) of the Plan" was "to make clear that the distribution from STI was to be in accordance with [those Sections] . . . so that if, in fact, there was a mistake as occurred here, for example, that could be corrected, STI could ultimately be subject to an order correcting the mistake."  R. 17, Ex. A at 16.  The Bankruptcy Court reasoned that any other interpretation would make the concluding phrase of Section 5.3(f)(i) redundant.  R. 17, Ex. A at 16.

The common sense reading of the plain language of Section 5.3(f)(i) suggests that the language means only that the stock that STI transferred to the Trust would exclusively be eligible for distribution to those who make the "trust interest" election and not to others.  It does not mean that STI has a continuing duty to distribute shares if the person making the decision to distribute those shares—the Trust—fails to do what it is supposed to do.  Instead, Section 5.3(f)(i) must be read in the context of the Plan and ATLT Agreement as a whole including the several provisions in the ATLT Agreement that authorize the Trustee to exercise discretion with respect to distribution to Electing Holders of Trust Assets or alternatively cash proceeds thereof. It is clear that STI's obligation was only to distribute the New STFI Common Stock to the ATLT.  Thereafter, it was the ATLT's (not STI's) obligation to distribute the ATLT Assets (or cash proceeds thereof) in accordance with Sections 3.4(a) and 3.5(a) of the Plan.

This is the only reading that reconciles all the provisions of the Plan and the ATLT Agreement.  XO and the Bankruptcy Court's strained reading of the section negates all the

provisions in the Plan and Confirmation Order (set forth in the STI Brief and this Reply)[6] that provide for STI to operate free and clear of the Bankruptcy Court's jurisdiction. The Plan and ATLT Agreement set forth a framework for the distribution of the ATLT Assets (or proceeds) that not only provides no role for STI in the distribution of the ATLT Assets, but goes further and specifically excludes STI from interest in the ATLT Assets or the ATLT. Given this framework, it is not reasonable to conclude, based upon an implication from the "in accordance with" language in 5.3(f), that the Plan drafters intended a continuing role or duty for STI.

**B.    Once STI Transferred its Interests, the ATLT Beneficiaries had no Claim Against STI.**

The Plan and ATLT Agreement provide that, after the Initial Effective Date had passed and STI had transferred its title and interests to the ATLT Assets, no ATLT Beneficiary had a claim or cause of action against any of the Debtors.

> (c)    Pursuant to the Plan, in consideration for their having received ATLT Trust Interests, the ATLT Beneficiaries shall be deemed to have transferred to the ATLT any and all claims and causes of action such ATLT Beneficiaries may have against any Person in connection with, or in any way related to, the ATLT Assets or the Debtors.

R. 6, Ex. B, §1.02(c). A straightforward reading of this provision of the ATLT Agreement is that on the Effective Date, V&K became vested with its Trust Interests, including its ATLT "B" Interest, in satisfaction of its claims against the Debtors. V&K changed its status as an Allegiance Telecom Creditor to one of beneficiary of the ATLT. By operation of the Plan, Electing Creditors, including V&K thus relinquished their claims against any of the Debtors in exchange for their rights against the ATLT as Trust beneficiaries. The STI Orders compelling STI to issue additional shares are completely inconsistent with this provision of the ATLT Agreement, which releases STI from claims by V&K.

---

[6] *See* Confirmation Order ¶ 18(c), R. 5 at 24; Confirmation Order ¶ 19, R. 5 at 25; Confirmation Order ¶ 31, R. 5 at

**C.  V&K's Appropriate Remedy for ATLT's Breach is Money Damages.**

As previously stated, the Plan is a binding contract between STI, the Trust, and V&K. 11 U.S.C. § 1141(a). The Trust's breach of that contract gave rise to a claim for damages by V&K. Instead of exceeding its post-confirmation jurisdiction and ordering specific performance to the detriment of STI and its shareholders, innocent third parties, the Bankruptcy Court could and should have provided V&K with a remedy of money damages resulting from the Trust's breach of the Plan. *See, e.g., Pritzker v. Yari*, 42 F.3d 53, 72 (1st Cir. 1994) ("In respect to damages arising out of a breach of contract, it is a basic tenet of contract law that a legal remedy (*e.g.* a sum of money) is presumptively preferable to an equitable remedy (*e.g.* specific performance) so long as the former is adequate and ascertainable.") (citing 3 Farnsworth on Contracts § 12.4); *see also* Restatement (Second) of Contracts § 364(1)(b) ("Specific performance or an injunction will be refused if such relief would be unfair because . . . the relief would cause unreasonable hardship or loss to . . . third persons.").

**IV.  The Bankruptcy Court's STI Orders Impermissibly Modified the Plan in Violation of 11 U.S.C. § 1127.**

As set forth in the STI Brief, the STI Orders modified the Plan in violation of 11 U.S.C. § 1127. XO complains that STI raises this issue of plan modification for the first time on appeal and has thus waived the issue. STI does not raise this issue for the first time on appeal-- through all stages of this dispute STI has argued that, pursuant to the Plan as confirmed, it issued all of the shares it was required to issue and that it had no duty to issue additional shares. Additionally, even should the court find that STI did not raise the plan modification issue prior to this appeal, the general rule that appellate courts do not consider issues that were not raised before the trial court is a "rule of prudence" rather than an "absolute bar." *Sunbeam Prods., Inc. v. Wing Shing*

---

29; Plan § 5.3(f) R. 4 at 18.

*Prods.*, 311 B.R. 378, 397 (S.D.N.Y. 2004); *see also Baker v. Dorfman*, 239 F.3d 415, 420-21 (2d Cir. 2000). Courts will exercise their broad discretion to consider issues not raised in the lower courts "(1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding." *Baker*, 239 F.3d at 420-21 (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996)). The issue of plan modification is one such "purely legal issue which is easily resolved" which, in the discretion of the court, may be reviewed on appeal despite not being raised before the trial court. *See Coogan v. Smyers*, 134 F.3d 479, 487 (2d Cir. 1998) (reaching the merits of a purely legal issue not raised before the trial court).

### REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. Bankr. P. 8012, Appellant respectfully requests that this Court hear oral argument in connection with this appeal, as oral argument should aid the Court in its understanding of the bankruptcy issues raised by this appeal.

### CONCLUSION

Based on the foregoing, the Court should enter an order (i) reversing the Stock Order; (ii) reversing the Distribution Order; and (iii) granting STI such other and further relief that this Court deems just and proper.

Dated: May 19, 2008.

                HAYNES AND BOONE, LLP

                /s/ Jason A. Nagi
                Judith Elkin (JE-4112)
                Jason A. Nagi (JN-6891)
                153 East 53rd Street, Suite 4900
                New York, NY 10022
                Phone: 212.659.7300

                Robert D. Albergotti
                901 Main St., Suite 3100
                Dallas, TX 75202
                Phone: 214.651.5000

                *Counsel to Shared Technologies Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all parties listed below via (i) United States first class mail, postage prepaid, and (ii) via e-mail on the 19th day of May, 2008, in accordance with the Federal Rules of Civil Procedure.

/s/ Jason A. Nagi

Ira S. Dizengoff
Abid Qureshi
Kenneth A. Davis
AKIN GUMP STRAUSS HAUER
    & FELD LLP
590 Madison Avenue
New York, NY 10022
E-Mail: idizengoff@akingump.com

**COUNSEL FOR ALLEGIANCE TELECOM LIQUIDATING TRUST**

Martin S. Siegel
BROWN RUDNICK BERLACK
    ISRAELS LLP
7 Times Square
New York, NY 10036
E-Mail: msiegel@brownrudnick.com

Anthony L. Gray
BROWN RUDNICK BERLACK
    ISRAELS LLP
One Financial Center
Boston, MA 02111
Email: agray@brownrudnick.com

**COUNSEL FOR XO HOLDINGS, INC.**

David S. Pegno, Esq.
DEWEY PEGNOT & KRAMARSKY LLP
220 East 42nd Street, 33rd Floor
New York, New York 10017
E-Mail: dpegno@dpklaw.com

Marshall King
Craig Bruens
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
E-Mail: cbruens@gibsondunn.com
        mking@gibsondunn.com

**COUNSEL FOR MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED**